# THE LAKE ROLAND ELEVATED RY. CO. *vs.* WM. F. FRICK and MARY GARRETT, Executors of ROBERT GARRETT.

*Elevated Street Railways—Damage to Abutting Property—Evidence —General and Special Benefit Caused by Railway—Action by Executor for Injury to Real Estate in Testator's Lifetime—Recital of Consideration in Deeds.*

An executor may maintain action for an injury to the real estate of his testator caused in the latter's lifetime.

In an action to recover damages for injury to plaintiff's property caused by the construction of an elevated railway in the street upon which the property abutted, a witness testified that before the building of the railway the market value of plaintiff's lot was a certain sum and that after it was built the lot was worth a lesser sum, being damaged to that extent by the road. *Held*, that the witness might be asked what the value of the property would have been if there were no elevated structures in front of it, assuming its value to have been as stated by the witness before the erection of the structure. Such a question merely calls for the statement in another form of the estimate already made by the witness

In such action evidence as to the effect of the railway upon property belonging to other parties differently situated and suitable for different purposes is not admissible.

The recital of the amount of the consideration set forth in a deed is not competent evidence between other parties to show the price for which the property was sold, because it is *res inter alios acta.*

When the question at issue is whether plaintiff's property was damaged by the construction of defendant's elevated railway in a street in front of the property, and if so the amount of such damage, the defendant is not entitled to deduct from the damage caused by its railway any increase in the value of plaintiff's property arising from the operation of the road which is common to all the property in that vicinity or any increase in the value arising from the growth of the city or any other general cause.

Appeal from a judgment of the Superior Court of Baltimore City (RITCHIE, J.)    At the trial the following prayers were offered:

*Plaintiff's 1st Prayer.*—That if the jury shall find from the evidence that Robert Garrett was in his lifetime and at

the time of his death, the owner of the lot of ground lying on the west side of North street or Guilford avenue, bounded northwardly by Chase street; southwardly by Eager street, and westwardly by Hunter alley, and that Robert Garrett being so owner thereof, the defendant erected in the centre of a portion of said North street or Guilford avenue, between Chase and Eager streets, an inclined plane composed of an embankment, a stone abutment about eighty feet in length and between fifteen and sixteen feet wide, an iron or steel truss-work resting on said abutment and supported by posts planted in said street, all constituting part of the elevated railway structure of the defendant in said street, and shall further find that the said abutment and structure in front of said lot impaired the access to said lot originally afforded by said street and rendered the said lot or some part of it less advantageous for building purposes than it was previously, and made the market value of said lot in the lifetime of the said Robert Garrett less than it would have been if said structure had not been so erected in front thereof, then the plaintiffs are entitled to recover in this action the amount of such depreciation thereby given to said lot. (Granted).

*Plaintiffs' 2nd Prayer.*—That if the jury shall find for the plaintiffs under the plaintiffs' prayer, the jury shall not, in making any comparison of the market value of the lot mentioned in plaintiffs' first prayer before and its value after the erection of the abutment and elevated structure mentioned in plaintiffs' first prayer, take into their consideration in estimating such value thereof after the construction of said abutment and elevated structure any appreciation which may have been caused by general benefits arising from the operation of said electric railway (if such they shall find to have been thereby caused), or any rise in value which they shall find (if such they shall find), that such lot of ground received from the operation of said electric railway or from any other causes affecting generally lands in the vicinity. (Granted).

*Plaintiffs' 3rd Prayer.*—That if the jury shall find that the lot mentioned in plaintiffs' first prayer has been actually damaged by the presence in front of it in said North street or Guilford avenue of the abutment and elevated structure mentioned in plaintiffs' first prayer, they cannot set off against said damage any general benefits caused by the electric railway of the defendant, if any such they shall find. (Granted).

*Plaintiffs' 4th Prayer.*—That there is no evidence in this case of any special benefits to Robert Garrett in his lifetime, or to the plaintiffs, or to the lot of ground mentioned in plaintiffs' first prayer, from the construction of the abutment and elevated structure on North street mentioned in plaintiffs' first prayer, or from the construction or operation of the defendant's railway in said street. (Granted).

*Defendant,s 1st Prayer.*—That unless the jury shall find from the weight of the evidence that the lot bounded by Guilford avenue, Eager street, Chase street and Hunter alley, has been diminished in market value by reason of the construction, maintenance and use of the defendant's elevated structure referred to in the evidence, then their verdict must be for the defendant.

*Defendant's 2nd Prayer.*—That unless the jury shall find from the evidence that the lot bounded by Guilford avenue, Eager street, Chase street and Hunter alley, was of less market value after the construction of the elevated structure mentioned in the evidence than it was at the time said structure was built, and shall further find that such loss of value was caused by the construction or use of said elevated structure, their verdict must be for the defendant. (Refused).

*Defendant's 3rd Prayer.*—That if the jury shall find from the evidence that the defendant's elevated structure is used for the operation of the electric city passenger cars of the defendant's railway, then in determining whether said structure has diminished the market value of the *plaintiffs'* lot, the jury must take into consideration the fact that it is so used.

The Court granted the first, second, third and fourth prayers offered by the platntiffs, and refused the first, second and third prayers offered by the defendant as offered ; but granted the said first prayer offered by the defendant after modifying it by adding the following clause at the end of said prayer :

" But in determining whether there has been any such diminution in value or not, the jury is instructed that if they find that any damage was done to the market value of said lot by the construction and use of said elevated road and said abutment, they are not to set off against the same or deduct therefrom any enhancement (should the jury find any), in the value of the lot in question caused by the construction and operation of said road, which was common to property generally along the line of said road."

And granted defendant's third prayer after adding the following clause as the end thereof:

" That is to say, the jury is not to regard such structure as a dead or unused structure and is not to regard such abutment as a dead or unused piece of masonry."

There was a verdict for the plaintiffs for $6,000, and judgment thereon.

The cause was argued before McSHERRY, C. J., BRYAN FOWLER, PAGE and BOYD, JJ.

*Francis K. Carey* (with whom were *John N. Steele, John E. Semmes, Nicholas P. Bond, S. Tagart Steele* and *William H. Buckler* on the brief), for the appellant.

This suit is based upon alleged injuries to the permanent fee value of the lot owned during his lifetime by Mr. Garrett, and it being a well-established principle of law that executors or administrators cannot recover for any injuries done after the death of the testator or intestate, and it being conceded that the lot in question has been from the time of the building of the road and is still vacant, the proper party to maintain the suit after the death of the fee-simple

owner was the devisee of the land, Mrs. Garrett.   If any
injury is done to the lot in question, it is done to the pres-
ent owner of the lot and not to the executors, who repre-
sent only the personal estate of the testator.   It is plain
that it might well be the case that the heir or devisee of
land would be unwilling to take the position before a jury
that the property was damaged, and unless the heir or de-
visee was held to be the proper party to maintain and con-
tinue such a suit, the extraordinary spectacle would be pre-
sented of the executors or administrators of an estate
pressing such a suit to trial, and injuring the market value
of the property for the purposes of sale, by bringing wit-
nesses to swear that it was damaged, against the will of the
real owner.   Article 75, sections 24–33, Code.

The first exception arises out of the objection of the ap-
pellant, overruled by the Court, to a speculative question,
put by the appellees' counsel to the witness Gorter.

The appellant contends that the Court erred in overrul-
ing its objection to this question.   *Roberts* v. *New York
Elevated Railway*, 128 N. Y. 455 ; *Doyle* v. *Metropolitan
Railway*, 128 N. Y. 488 ; *Suydam* v. *New York Elevated
Railway*, 19 N. Y. Suppl. 50.   In the case of *Doyle* v.
*Metroplitan Elevated Railway* (*supra*), the question objected
to and held to be inadmissible was : " What, in your judg-
ment, would the property be worth without the elevated
railway " (page 494), and the questions held to be inadmis-
sible in the other cases were of a similar character.

The second exception arises out of the claim of the ap-
pellant that the Court erred in rejecting the certified copies of
the deeds offered by the defendant for the purpose of show-
ing the prices at which the lot and improvements at the
northeast corner of North and Eager steeets, immediately
opposite the lot in question, had sold for, after the building
of the defendant's railway.   A certified copy of an instru-
ment required to be recorded is *prima facie* evidence of the
circumstances necessary to give it validity, and receipts and
acknowledgments in deeds of the amount of the purchase

money paid are *prima facie* evidence that the amounts of purchase money recited as having been received by the grantor, were in fact paid by the grantee, although parol evidence may be admitted to explain or contradict such recital of consideration.    *Warner* v. *Hardy*, 6 Md. 525; *Cranford* v. *State*, 6 H. & J. 231; *McCauley* v. *State*, 21 Md. 556; *Bladen* v. *Wells*, 30 Md. 577; *Morgan* v. *Bitzenberger*, 3 Gill, 350.

The third exception is based upon the refusal of the Court to permit testimony to be introduced by the appellant showing the effect of the building and maintenance of the southern inclined approach upon the property opposite to it.   The appellant understands that it is conceded that testimony is admissible relating to the effect of the structure upon land similarly situated, and that the only objection to this testimony was that stated by the Court, viz., that the property opposite the southern inclined approach was too remote from the lot in question to furnish a proper subject of comparison.   The appellant claims that the fact that the southern inclined approach is an exact duplicate of the northern inclined approach would give a peculiar appropriateness and relevancy to the testimony offered by the appellant in regard to the property opposite to it.   The varied character of the improvements opposite the southern inclined approach, viz., a church, a school, stables, shops and other business property, makes it impossible for the appellees to fairly contend that the character of the uses made of the property in the southern square render it an unfair guide for the jury.   In the square opposite the Garrett lot are a saloon, a tile factory, a lumber yard and small dwelling-house property, and yet testimony in regard to property in this square was offered on both sides without objection.  The test always is whether the property is "similarly located," and the distance of the property offered for comparison is entirely a relative matter to be determined by the circumstances of each case.   Thus, in *Cemetery Association* v. *Railroad Company*, 121 Illinois, pp. 199, 212, the

Court held that the " evidence in regard to prairie land one mile distant," was competent.

But apart from these four grounds of appeal the appelpellant claim that the learned Judge of the Superior Court erred in his instructions to the jury as to the measure of damages.    The appellant believes that this Court will conclude from the evidence in the cause on both sides that the *actual result* of the construction and use of the appellant's elevated structure has been to increase the market value of the lot in question by nearly 50 per cent.    Although the Court gave practically the same instructions in the first trial of the case, the jury refused to give more than the nominal verdict of five hundred dollars.

It will be plain to the Court that the practical, as well as the legal effect of the granted three prayers, was to instruct the jury not only that there was no benefit to the property by reason of the use made of the elevated structure, which they could take into legal consideration, but actually to require them to separate damages and benefits, and to base their verdict solely upon such *damages* (considered separately from *benefits*) as would be done to abutting property by the maintenance of such a structure, which is either not used for railway purposes at all or could be used for some injurious purpose, such as for the operation of a steam railway.    The appellant claims that such an attempt at division of damages and benefits, which wholly forbids the jury to consider benefits, is not only opposed to reason, but has no sanction whatever in any adjudicated case, at least, where damages are claimed for alleged *consequential injuries.*

The attempt made by the appellees and approved by the Court below, to prevent the jury from considering the actual result of the building and use of the structure complained of upon the market value of the lot in question, is founded upon a metaphysical paradox.    The actual result of the appellant's act has been to increase to a most extraor dinary extent the market value of the lot in question ; that is to say, by reason of the appellant's act the market value

of the lot in question has been increased in value about fifty
per cent.   Now, by what fair process of reasoning can it be
possible for a benefit to be legally construed into a subject
of damage?     The appellant has either diminished the
market value of the lot or it has not.    If it has not, surely
upon no principle of law can damages be charged against
the appellant.    This exact question has been several times
before the New York Court of Appeals under precisely
similar circumstances, and the position taken by the appellant
in this case has been vigorously sustained. *Bohm* v. *Metro-
politan Elevated Railway Company*, 129 N. Y. 593–594;
*Becker* v. *Metropolitan Elevated Railway Company*, 131 N.
Y. 511–512; *Sutro* v. *Manhattan Elevated Railway Com-
pany*, 137 N. Y. 593.

The Court of Appeals of New York has held that an
interference with the use of the street easements of access,
light and air by an elevated railway constitutes a "taking"
of the property of the abutting lot owner; that the value
of these easements has been held to be nominal, and that
the lot owner has been permitted to recover from the
elevated railway damages which are represented by any
diminution caused to the market value of his lot, which the
Court of Appeals of New York calls "the rest" of his
property.    In Maryland, this Court has proceeded directly
to the real issue, and has reached the same result as the
New York Court of Appeals, by permitting the abutting lot
owner to recover as *consequential damages* the amount rep-
resented by any diminution which an underground or
elevated railway may cause to the market value of his lot.
*O'Brien* v. *Baltimore Belt Railway*, 74 Md. 375; *Garrett* v.
*Lake Roland Elevated Railway*, 79 Md. 277.

The appellant claims that there is a clear distinction to
be made between the case at bar, where no property is
"taken," and where the sole inquiry is and must be as to
the actual *consequential* effect of the appellant's act upon the
market value of the lot in question, and cases which relate
to the allowance of damages, in condemnation proceedings,

where land is actually "taken." But, even if this Court should be disposed to treat the case at bar from the standpoint of a condemnation case, the appellant claims that this Court has already fully sustained the position contended for by the appellant in relation to such proceedings. *Shipley* v. *B. & P. R. R. Co.*, 34 Md. 343.

*Arthur W. Machen* and *Arthur George Brown*, for the appellees.

The rule now well established in most jurisdictions in this country, in cases where the construction of a railroad involves damages to property of an individual, which is particularly affected in an injurious manner by the work, and for which injury the law provides a means of obtaining compensation, is that, while a set-off may be made against the damage done to the property for any *special* benefits which may be conferred upon it by the work, no deduction is to be made for *general* benefits resulting either to the public at large or to owners generally of lands abutting on or adjacent to the road. Obvious justice is the basis of the rule. The damage done is special. It affects the owner of that piece of property and no one else. It is necessarily an injury peculiar to that property. A special and peculiar benefit to the same property, is something which the owner receives the advantage of, and it may be proper that he should be charged with it. On the other hand, a general benefit caused to others, as well as himself, is something which they are not required to pay for, nor is it right that he should have the burden of paying for it for their advantage.

In the case of the construction of a railway on a public highway, the general benefit which may result from it, including in this the benefit to the owners of lots bordering on the highway or in proximity to it, is the justification for the grant of the railway franchise. If the facilities of travel afforded by the railway directly increase the value of all the land upon the street, or increase it indirectly by the

stimulus which is given to the erection of houses in the vicinity, and a consequent general increase of values, these are beneficial consequences which the railway corporation can claim no recompense for giving. Its recompense is in the fares it receives from its passengers, or other profits of the use of its franchise. *Sullivan* v. *North Hudson R. R. Co.*, 51 N. J. Law, 540; *Pittsburg Ry. Co.* v. *McCloskey*, 110 Pa. St. 442; *Adden* v. *White Mountain R. R. Co.*, 55 N. H. 414; *Hosher* v. *Kansas City, &c., R. R. Co.*, 60 Missouri, 303; *Mississippi R. R. Co.* v. *McDonald*, 12 Heisk. Tenn. 56; *Chicago, &c., R. R. Co.* v. *Blake*, 116 Ill. 163, 169; *Parks* v. *County of Hampden*, 120 Mass. 395; *Railroad* v. *Foreman*, 24 W. Va. 662, 672; *Arbrush* v. *Town of Oakdale*, 28 Minn. 61, 62; 2 *Dillon Munic. Corp.* (4th ed.), section 624; *Lewis on Eminent Domain*, section 471, page 606; 3 *Elliott on Railroads*, section 989.

The decisions in Maryland are in harmony with the rule which has the support of the general current of authority and the best reasoned judicial opinions, as evidenced by the cases and leading text-writers above referred to. *Shipley* v. *Balto. & Potomac R. R. Co.*, 34 Md. 343; *Friedenwald* v. *Mayor & C. C. of Balto.*, 74 Md. 116, 126.

BRYAN, J., delivered the opinion of the Court.

The present is one of the many actions which have been brought to recover damages caused by the construction of the elevated railway structure belonging to the appellant. Robert Garrett brought the action in his lifetime; and after his death his executors became parties plaintiff. The judgment having been rendered in favor of the plaintiffs, an appeal was taken by the defendant.

Garrett was the owner of a lot of ground fronting on the west side of North street. The elevated structure of the defendant was in front of a portion of this lot, and was alleged to injure the property and diminish its value. A particular description of the lot and the structure is not considered necessary, as they are fully described in the opinions deliv-

ered in the equity suit brought by Garrett against the de-
fendant, and reported in 79 Maryland.    At the trial a
demurrer was filed to the declaration as it was amended
after the executors were made parties.    It was contended
that the executors had no right of action for injuries done
to the real estate in the lifetime of the testator.    We think
that if this question were ever debatable, it must be con-
sidered as settled in this State.    *Kennerly's case*, 1st Mary-
land, 107 ; *Same case*, 2 Maryland, 245 ; *Barton Coal Com-
pany's case*, 39 Maryland, 1.

Testimony was offered by the plaintiffs tending to show
that the lot was damaged by the construction of the ele-
vated crossing.    Albert L. Gorter testified that he knew
the market value of the lot before the railroad was built,
and its market value after it was built ; and that before the
building of the road it was worth more than fifty-two thou-
sand dollars ;   and that after it was built the value was fif-
teen thousand less ; that the lot was damaged to this extent
by the railroad.    He was then asked the following ques-
tion : "Q. Assuming the value of the lot after the construc-
tion of the railway, the value of the property to have been
$37,066.67, what, in your opinion, would have been its
value in 1894, if there were no elevated structure in front
of it ?   A. $15,000 more."    Defendant objected, and its
objection being overruled, took an exception.    The evi-
dence seems to be merely the statement in another form
of the estimate which the witness had already made.

The plaintiffs offered other evidence tending to show that
the lot had been greatly injured by the construction of the
elevated crossing in front of it ; and that a general rise in
the value of property in the neighborhood had taken place
since the building of the road ; that it was not owing to the ex-
istence of the road, but to other causes operating at the
same time.    The defendant produced certified copies of cer-
tain deeds, and tendered them in evidence for the purpose
of showing for what price the property was sold which was
therein described.    On objection by the plaintiffs the Court

rejected the evidence and the defendant excepted. These certified copies are evidence that the grantors validly conveyed to the grantees the property therein described. In other words there are evidence of every circumstance necessary to make the deeds valid conveyances. As between the parties the acknowledgements of the payment of the considerations are evidence that they were actually paid. And if the deeds should be attacked for fraud in a suit at law or in equity we may concede (for the sake of the argument) that the parties alleging that the considerations were not paid would be obliged to sustain the charge by proof. And that the presumption of innocence would apply in favor of the party charged with fraud, and that the *onus* of proof would rest upon his assailant. But as between parties in no way connected with the deed, the statement by the grantor that he had received so much money would be *res inter alios acta ;* it would be hearsay pure and simple. A statement made by a stranger that he had concluded a transaction with another stranger can have no binding effect upon third persons ; it is certainly not entitled to be received as evidence without the sanction of an oath made by some witness acquainted with the fact. In *Lloyd* v. *Lynch*, 28 Pennsylvania State R. 424, the Court, speaking of an acknowledgement of the payment of the consideration contained in a deed, as it affected strangers to the instrument, said : " Against them, it is nothing but hearsay. It is a mere *ex parte* declaration not under oath, taken without any opportunity to cross-examine. It has long been settled that such declarations are not evidence against strangers."

Mr. A. R. White was called by defendant as a witness to prove the character and condition of the neighborhood and property on North street between Centre and Saratoga, now facing the main structure of the defendant, as they existed before the structure was built and its present character and condition ; and also to show the character and condition of the improvements between Saratoga and Lexington streets opposite the southern inclined approach to the elevated struc-

ture ; the defendant offering to follow up this testimony by proof that the southern inclined approach is practically a counterpart of the northern approach. The testimony was rejected and the defendant took an exception. We will consider these questions, although the exception is not taken in such manner as to present both of them. We presume that it was the intention of the defendant to follow the evidence by testimony showing the effect of the building of the elevated road. The distances are not shown in feet ; but Saratoga street is distant four blocks from Centre ; and Centre is distant four blocks from Eager. The witness testified that in the space between Saratoga and Eager there was but one lot which was not occupied by buildings and that one was used as a marble yard ; that there were only two houses used as dwellings, and their occupants kept bar-rooms ; that most of the property was used for business purposes and large warehouses ; and that the streets were " *honeycombed* " with the tracks of steam railroads ; that there was no vacant land between Saratoga and Lexington ; and that opposite the structure there is a church, and the Hibernian school-house, and that there are stables, the express company and a paint shop. Evidence had been given that the Garrett property was vacant land, and before the construction of the railroad was suitable for dwelling-houses. As the property in regard to which the evidence was proposed was extremely different from the Garrett lot, we think that the effect upon its value caused by the construction of the railroad would furnish no aid in ascertaining the effect on the Garrett lot.

The defendant offered evidence that the value of the Garrett property had not been diminished by the building of the road ; and also evidence that it had been increased by it. Both parties offered prayers for the instruction of the jury. The question to be decided was whether the lot had been diminished in value by reason of the elevated structure in front of it ; and if so, what was the extent of the injury. Ordinarily the question would be settled by a comparison

of values before and after the erection of the structure ; but in case there were a general advance in the value of property in the neighborhood from the growth and progress of the city or from any other cause, this test would not be sufficient.    To state a hypothetical case : Suppose that a lot is worth thirty thousand dollars, and that it is injured by the railroad to the extent of ten thousand dollars, thus reducing its value to twenty thousand dollars ; and that after the building of the railroad there is a general rise in the value of property in the neighborhood, and that participating in this improvement, the value of the lot at the time of the trial reaches forty thousand dollars, which is more than it was worth before the road was built.    The railroad cannot be exempted from liability for the damage which it has done, by the circumstances that the injured property has received the benefit of the general prosperity.    The railroad has inflicted an injury and the property still suffers from the effect of it.    If the damage had not been done, the value of the lot would have been greater ; and this increase in reasonable probability would be at least equal to the extent of the injury.    It has been argued by the counsel for the appellant that ''the building and use of the structure '' has increased the value of the lot.    We do not suppose that he means obstructing access to the lot, and reducing the width of the open street in front of it, has increased its value ; but that the existence of the railroad by increasing and improving the facilities of travel, and in other ways has conferred benefits upon the property.    It is insisted that these should be taken into consideration by the jury, and if they are found to equal the injury, that the verdict ought to be for the defendant.    There has been some conflict of opinion in the Courts on this question.    We cannot do better than to quote a passage from a recent work of great value, where the result of the weight of authority is stated.    We refer to *Elliott on Railroads*, and we make an extract from volume 3, section 989: " Where the construction of a railroad adds increased value to the land of an individual different in its nature from

the benefit to the general community, he receives a special benefit which lessens his injury or loss, so that he really ·sustains no injury or loss except that which is above and beyond the amount of the peculiar benefit which the construction of the railroad confers upon him by enhancing the value of that part of his land which is not appropriated. But where the land-owner reaps no advantage peculiar to himself, but only such as is shared by the community at large, there is reason for excluding the benefits from consideration. Special benefits may be said to be such as are direct and peculiar to the land. General benefits such as are bestowed upon other lands of similar character and situation in the same vicinity." This is the doctrine in this State. *Shipley* v. *Baltimore and Potomac R. R. Co.*, 34 Maryland, 343 ; *Friedenwald* v. *Mayor, &c.*, 74 Maryland, 126. We suppose that we have shown our approval of the ruling of the trial Court on the prayers. We think, however, the Court might properly have rejected the defendant's third prayer. It seems to have been drawn on the theory that the running of the passenger cars conferred benefits on the lot. There was no evidence of any special benefits ; and we have already given our opinion in reference to general benefits.

*Judgment affirmed.*

(Decided June 23rd, 1897).