# WASHINGTON, BALTIMORE & ANNAPOLIS ELECTRIC RAILROAD COMPANY

*vs.*

## SETH H. LINTHICUM ET AL.

———

## SETH H. LINTHICUM ET AL.

*vs.*

# WASHINGTON, BALTIMORE & ANNAPOLIS ELECTRIC RAILROAD COMPANY.

*Railroad crossings: contract to construct; breach; damages.*

A contract between the owner of a tract of land and an electric railway company provided that the latter should construct railway crossings along the right of way through the property; in a suit for damages for breach of that contract, it was: *Held,* that in such a suit it was proper to consider the adaptability of the land to development for suburban residences, and as evidence of such contemplated development it was: *Held,* that the number of crossings might be considered, as tending to show that they were not intended as farm crossings merely.     p. 267

In such cases compensation is not to be estimated simply with reference to the value of the land to the owner, in the way in which he maintained it, but consideration should be given to its value in view of the uses to which it was reasonably capable of being put.                                        p. 268

*Decided December 16th, 1915.*

Cross appeals from the Circuit Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The two causes were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCK-BRIDGE, JJ.

*George Weems Williams* (with whom was *Frank Gosnell*, on the brief), for the Washington, Baltimore and Annapolis Electric Railroad Co.

*S. S. Field*, for Seth H. Linthicum, et al.

THOMAS, J., delivered the opinion of the Court.

The bill of complaint in this case was filed in the Circuit Court of Baltimore City by Seth Hance Linthicum, Wade Hampton Linthicum and M. Delmah Linthicum, his wife, against the Washington, Baltimore and Annapolis Electric Railroad Company for the specific performance of a covenant contained in a deed from the plaintiffs to the Washington, Baltimore and Annapolis Electric Railway Company, or for compensation to the plaintiffs for the loss and damage sustained or that they will sustain by reason of the failure of the defendant to perform said covenant. The bill was answered by the defendant, and about three hundred and fifty printed pages of evidence was offered in support of the respective contentions of the parties. The Court below refused to grant the relief sought and dismissed the plaintiffs' bill. On appeal that decree was reversed, and the case was remanded in order that the Chancellor might ascertain, from the evidence already taken, and such additional proof as the parties desired to offer, the compensation proper to be awarded to the plaintiffs for the loss they have suffered and

will continue to suffer because of the non-performance of the covenant.

The appeal referred to is reported in 124 Md. 263, and the facts of the case are stated in the opinion delivered by JUDGE STOCKBRIDGE as follows: "The Baltimore and Annapolis Short Line Railroad, which will hereinafter be referred to for sake of convenience as 'The Short Line,' was prior to the 15th of March, 1907, operating an electric railroad between Baltimore and Annapolis, and its route in part was along and over a right of way which had been acquired from the plaintiffs, or their predecessors in title. In the year 1906 and early part of 1907, the construction of an electric railway between the cities of Baltimore and Washington and Annapolis was begun by a corporation which had been formed for that purpose, bearing the name of the Washington, Baltimore and Annapolis Electric Railway Company. The route to be followed by this road, as laid out by the engineers, involved a double crossing of the tracks of the Short Line, as they existed at that time. Negotiations were entered into between the W., B. & A. Ry. Co. and certain members of the Linthicum family which culminated in certain conveyances bearing date March 15th, 1907. The effect of these was to shift the location of the Short Line tracks a little to the south and east of the projected route of the W., B. & A. Ry. Co. over land which was acquired from the Linthicum family, thus enabling the W., B. & A. Ry. Co., to construct a route partly over the former right of way of the Short Line and certain additional land acquired from the Linthicums, so as to avoid a crossing of railway tracks by one road over the other. This arrangement was consummated by two deeds, one a conveyance from Laura E. Linthicum, W. Hampton, M. Delmah and Seth Hance Linthicum to the Terminal Real Estate Company, of the land for the right of way to be used and occupied by the Short Line under its relocation; and the other from the same grantors to the W., B. & A. Ry. Co. of the additional land needed by the cor-

poration for the construction of its railway; this deed was executed for an expressed consideration of $1,450, and the performance of the covenants and conditions contained in the deed, the two most important of which related to crossings and the establishment of a platform station. The covenant with regard to the crossings was that the railroad company was 'to immediately construct and maintain three crossings of not less than 20 feet on the surface over its right of way and over the Baltimore and Annapolis Short Line Railway at the places indicated on the plat hereto attached and crossing said right of way on the property hereby conveyed and on the property conveyed by the parties of the first part to the Terminal Real Estate Company of Baltimore City by deed of even date herewith, with easy approaches thereto of not more than 4% grade and with a roadbed of not less than 20 feet wide in good condition.' In the deed of the same date from the same grantors to the Terminal Real Estate Company, the grantors reserved 'to themselves, their heirs and assigns over the described lot a private crossing 20 feet wide at the point shown upon said plat,' referring to the plat attached to the deed to the W., B. & A. Ry. Co. The rights, and of course restrictions upon those rights, so granted to the Terminal Real Estate Company passed by conveyance from it to the Short Line.

"The W., B. & A. Electric Ry. Co. became insolvent, and was directed to be sold under a decree of the Circuit Court of the U. S. for the District of Maryland. At this sale the property was purchased on behalf of a corporation bearing the name of the W., B. & A. Railroad Co., a corporation having practically the same executive officers as the insolvent railway Company, but with some changes of stockholders and bondholders from those of the railway company."

"By an agreement made between Wade Hampton and Seth Hance Linthicum and either the railway or railroad company, of the three crossings covenanted for in the deed of March 15th, 1907, two were consolidated to make one cross-

ing 40 feet in width, in place of two 20 feet each, and the third crossing has never been constructed by either the railway or railroad company. It is for the specific performance of the covenant in its relation to this third crossing that the present bill was filed, with the alternate prayer for an award of compensation should the Court refuse a decree for specific performance."

We said in the former appeal that the "purpose to be served by the installation of the crossing is the development, for suburban residences, of a tract of 58 acres belonging to the plaintiffs," and that the damages claimed in the case "were two-fold in their nature; namely, the damage alleged to have resulted to the plaintiffs between the time of the execution of the deed of March 15th, 1907, and the time of the institution of this proceeding; and, second, the permanent injury to the plaintiffs' property by reason of being deprived of the crossing." There was no evidence in the record from which the Court could ascertain the damages sustained by the plaintiffs prior to the institution of the suit, but in reference to the permanent injury the Court said: "With regard to the second element of damages, the estimates varied considerably, from $650 to $9,000—the plaintiffs themselves placing the damages at $6,000, while their expert witnesses gave higher figures. The case presents practically the same elements as are involved in a condemnation case, namely, the determining upon conflicting evidence of what is fair and just compensation, and the important question is, how shall this determination be made?"

After the case was remanded, the lower Court, upon the evidence previously taken and the additional proof offered by the plaintiffs and the defendant, and after the Chancellor had viewed the property at the suggestion of counsel for the Railroad Company, awarded the plaintiffs the sum of $6,000, and from its decree requiring the defendant to pay that sum to the plaintiffs, the defendant and the plaintiffs have brought these appeals.

The property which contains, as we have said, about sixty acres, is situated on the west side of the Railroad Company's right of way, in Anne Arundel County, between five and six miles from Baltimore City. The land rises to quite an elevation above the railroad, which runs north and south, and extends west to a road called Hammond's Ferry road. Wade H. and Seth H. Linthicums' houses or dwellings, with about three acres surrounding each of them, are located on that part of the land adjoining the company's right of way. South of the residence of Seth H. Linthicum, and about four hundred feet from the southern limits of the plaintiffs' property, there is a depression in the hill, and at that point the plaintiffs have opened a road called Maple road, from the railroad extending west to the Hammond's Ferry road. At the intersection of Maple road and the company's right of way, the company constructed the crossing forty feet in width, referred to by this Court in the former appeal, and erected a station, and the road crosses the tracks of the W., B. & A. Railroad and the Short Line Railroad to the State road running to Baltimore City, spoken of in the evidence as the Boulevard. The crossing in question in this case is six hundred feet north of the Maple road crossing and the station. At that point there is another depression in the land of the plaintiffs, and they intended to open another road through their land from that crossing extending west to the Hammond's Ferry road, with the view of dividing the land fronting on that road into building lots. The crossing would afford a direct outlet from those lots and the Wade H. Linthicum residence, across the tracks of the W., B. & A. and Short Line Railroads, and over the intervening land of the plaintiffs, to the Boulevard, on the opposite side of which is another suburban settlement known as Linthicum Heights.

The evidence adduced by the plaintiffs tending to show the damages they will sustain by reason of the defendant's failure to construct and maintain the crossing in question, is based upon the theory that the land is available for development for suburban residences.

Bruner R. Anderson, a member of the bar, who owns land in the neighborhood of the plaintiffs' property and has had some experience in developing property in Anne Arundel County, testified that if a road was extended from the crossing over the land of the plaintiffs to the west, twenty-five lots could be laid out fronting on the road, and that these lots would be worth with the road and crossing about four hundred dollars apiece, and that without the crossing they would be worth not more than two hundred dollars apiece, and that the house occupied by Wade Hampton Linthicum, and the three acres of land surrounding it, would be worth about one thousand dollars more with the crossing. In other words, that the damages the plaintiffs will sustain by reason of the failure of the defendant to construct the crossing will amount to $6,000.

Thomas R. Bond, who has been in the real estate business and engaged in the development of suburban property for a number of years, testified that about fifty lots could be laid out on a road opened from the crossing over the land of the plaintiffs; that these lots would be worth one hundred dollars apiece less without the crossing, and that the house and three acres of land surrounding it occupied by Wade Hampton Linthicum would be worth eight thousand dollars with the crossing and about five thousand dollars without the crossing.

A. Robinson White, a real estate broker of Baltimore City, when asked to state what additional value would be given to the property of the plaintiffs if it had a convenient outlet over the railroads at the crossing in question, said: "I divide the lots not into building lots, but into acreage, taking say thirty acres which will front on this new proposed road. I think that today in the open market it would sell by the acre at $150 per acre. I think with the new road to go through there and the right to go through it, it would sell for $300 an acre. I think that the house on the corner of the proposed new road and the electric line which was worth $5,200, would sell for that in the open market with

the road open and the right to go through it, and without the road it would be worth about $2,600 or $2,500—In other words, I think the property loses about $7,100 for the loss of the road. If you could put the road there you would get $7,100 more for the property than without it." In reply to the question by the Court, "You mean you would get it if sold by the acre as farm land that much, is that what you mean? he replied, "That is exactly what I mean."

Oscar L. Hatton, who stated that he was a member of the bar and was engaged in developing property on the Severn River, in Anne Arundel County, testified that he knew the property of the plaintiffs referred to in this case and that it was "beautifully adapted to development;" that about twenty-eight acres of the plaintiffs' land would be benefited by the proposed crossing and road and that in his judgment the property would be worth about $9,000 more with the crossing than it is without the crossing.

Seth H. Linthicum, one of the plaintiffs, testified that he was a member of the bar and had devoted a great deal of attention to real estate, and that about twenty-five acres of the plaintiffs' land through which a road from the crossing in question would run is worth about two hundred dollars an acre without the crossing and from five to five hundred and fifty dollars an acre with the crossing, but as the plaintiffs and the railroad company were mutually interested in the development of the property and the Linthicum Heights property, the plaintiffs were loath to bring this suit and would have been willing to accept $6,000 for the loss of the crossing.

J. Charles Linthicum, whose property is just north of the plaintiffs' property, and who, with his brothers, owns Linthicum Heights on the opposite side of the two railroads, stated that he thought that Mr. Bond's estimate of the loss the plaintiffs will sustain by reason of the failure of the defendant to construct the crossing was extremely moderate, and further testified as follows: "Q. What is your view about the house of Wade Hampton and the three acres around

it? A. As far as Wade Hampton's house is concerned, if somebody would tell me that I had to live there and go the way that he now has to go to get to the house, I would not want it at any price. But I presume that would not perhaps be giving it a proper value. His land is certainly worth a thousand dollars an acre, those three acres. The house could not be put up—— (Mr. Williams) : Do you mean to say the land is worth a thousand dollars an acre? (The Witness) : Yes, the land is worth a thousand dollars an acre, if you had this way in there, without any trouble. It is a beautiful location. It looks right on down into Baltimore. You can see the entire Patapsco River and down around Fort McHenry and as far as Fort Carroll, right from his front yard. You can see the whole landscape laid out before you. It is one of the prettiest views around Baltimore, and is easily worth a thousand dollars an acre. The house could not well be built with the substantial foundation and the slate roof which it now has and all modern improvements for less than five thousand dollars. And when I speak of building houses I know whereof I speak, because I have built a great many of them personally and knew pretty much what houses cost. I do not believe you could find a purchaser for it without this roadway across the railroad. I do not believe anybody who did not have it would buy it if they had no better inlet than what it now has. Perhaps it might bring three or four thousand dollars to some fellow who is willing to climb over the railroad, or willing to come through a barn yard and into the back way by the chicken yard, and so on. But I do not believe you could sell it at any price. I am certain no one at this trial table or here in Court would have it at any price, with the present entrance. Mr. Bond's estimate of three thousand dollars is certainly very small. It certainly would not sell for five thousand dollars in its present shape."

Alfred D. Bernard, a real estate expert, who was called by the defendant, testified at length to the advisability of adopting a different plan than that proposed by the plaintiffs

for the development of their property, which would not involve the use of the proposed road or crossing. When asked if it was possible for him "to come at any figure, definite figure, in dollars and cents, approximately, as to what, if any, damage is done to" the property of the plaintiffs "by the omission of the crossing" mentioned in the deed, he replied: "I do not see how it is possible to estimate the damage in dollars and cents, but it is apparent that there is some damage, there is some damage, because the man is deprived of access to the county road at a point where it is absolutely necessary for him to have access."

John J. Hurst, another witness called by the defendant, suggested a different plan from that proposed by Mr. Bernard, and in his judgment if another outlet was provided for the property of Wade Hampton Linthicum at a probable cost of seven hundred dollars, there would be no necessity for or advantage gained by the crossing in question.

The result of the evidence upon the question of damages is that the defendant's witnesses advise a different plan of development than that proposed by the plaintiffs. Mr. Bernard, while admitting that the plaintiffs will be damaged by the loss of the crossing, says that he cannot estimate the amount of the damages, and Mr. Hurst thinks that the necessity for the crossing would be obviated by another outlet from Wade H. Linthicum's property, which would probably cost seven hundred dollars. On the other hand the plaintiffs' witnesses fix the damages at from six to nine thousand dollars, and the award of the Court is the lowest estimate given by any of the plaintiffs' witnesses. In view of that fact, and the further fact that the lower Court had the advantage of hearing the testimony and viewing the property, we would not be justified in disturbing his award unless it was clearly erroneous, or was based upon some element of damages that should not have been considered.

The Court below in its decree found that the plaintiffs' land was available for suburban residences, and that the value of the land for that purpose was diminished to the extent

of $6,000 by reason of the failure of the defendant to con-
struct and maintain the crossing in question, and counsel for
the Railroad Company, relying upon the rule that the dam-
ages that a party ought to receive for the breach of a con-
tract should "be such as may fairly and reasonably·be con-
sidered either as arising naturally, *i. e.*, according to the
usual course of things from such breach of contract itself,
or such as may reasonably be supposed to have been in the
contemplation of both parties, at the time they made the con-
tract, as a probable result of the breach of it," insist that
damages on the development theory cannot be recovered as
arising in the usual course of things, and that they are not
such "as might reasonably be supposed to have been in the
contemplation of the parties at the time of the making of the
covenant, as a probable result of the breach of the same."
The theory of the defendant in this contention is that the
property of the plaintiffs at the date of the deed from the
plaintiffs to the Railway Company was farm land, and that
there is nothing in the record to show that either of the par-
ties to said deed had reason to suppose that the land would
be developed for suburban residences. In this view we can-
not concur. The land extends about ten hundred and fifty
feet along the right of way of the defendant, and the deed
provides for three crossings within that distance. That fact,
the other provisions of the deed and the circumstances under
which the deed was executed clearly indicate that the cross-
ings were not desired or intended to be used as farm cross-
ings. We said in the opinion rendered in 124 Md. 263, that
the case presented practically the same elements involved in
a condemnation case, and in 15 *Cyc.* 724, it is said: "Com-
pensation is not to be estimated simply with reference to the
value of the land to the owner in the condition in which he
has maintained it, but with reference to what its present
value is in view of the uses to which it is reasonably capable
of being put." On page 726 the same author says: "It may
be shown that the ground is adapted to be cut up and used
for city improvements. It is immaterial that the land is not

at the time built upon, that the owner has not filed a town plat, or that the land is used by the owner only for farming or dairy purposes."

In the case of *Callaway* v. *Hubner,* 99 Md. 529, JUDGE PEARCE, speaking for this Court, quotes the statement in *Matter of Furman Street,* 17 Wendell, 669, that the proper inquiry was "what is the value of the property for the most advantageous use to which it may be applied ?"; the statement in *Young* v. *Harrison,* 17 Ga. 30: "its value was not to be restricted to its agricultural or productive capacities, but that *inquiry should be made* as to all purposes to which it could be applied having reference to existing and prospective wants of the community," and the statement in *Boon Co.* v. *Patterson,* 98 U. S. 408: "Exceptional circumstances will modify the most carefully guarded rule, but as a general thing, we should say that the compensation to the owner. is to be estimated by reference to the uses for which the property is suitable, having regard to existing business wants of the community, or such as may be reasonably expected in the immediate future. * * * And that the adaptability of the land in question was a circumstance therefore which the owner had a right to insist upon as an element in estimating the value of his land," and then adds, "and if this was an element of value upon which the owner had a *right* to insist, it is equally an element which the trustees in the present case were *bound* in the exercise of due diligence and discretion, to take into consideration." In the case of *Brack* v. *M. & C. C. of Balto.,* 125 Md. 378, this Court, speaking through JUDGE URNER, said: "The rule is that the market value of the land is to be estimated with reference to the uses and purposes to which it is adapted, and any special features which may enhance its marketability may properly be considered."

Upon the evidence in the case, and the authorities we have cited, the Court below was fully justified in awarding compensation to the plaintiffs to take into consideration the

adaptability of their land to suburban residences. The fact that such adaptability is considered does not render the estimates of the value of the land too uncertain and speculative, and the damages the plaintiffs will sustain is not measured by the profits they may realize from the development of the land for suburban residences, but by the difference between the value of the land with the crossing in question and its value without the crossing, in view of the uses to which the land is adapted.

The Railroad Company also suggests that the crossing referred to in the deed to the Terminal Real Estate Company is a private crossing, and that the estimates of the witnesses rest upon the assumption that it was a public crossing. The crossing referred to was not a private crossing in the sense that it could only be used by the plaintiffs. On the contrary, under a proper construction of the deed it was clearly intended for the use and benefit of the plaintiffs and those claiming through them the land referred to in this case, and the testimony had reference to such use.

It follows from what has been said that the decree of the Court below must be affirmed.

*Decree affirmed, each party to pay one-half of the costs in this Court.*