## F. EGERTON WEBB ET AL. *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Laying of Railroad Track in Public Street Cutting Off Access to Land of Abutting Owner—Proof of Extent of Injury—Diminution in Market Value.*

When the construction of railroad tracks in a public street destroys or impedes access to the land abutting thereon, the landowner is entitled to recover damages for such injury, since his right to the use of the street for access to his land is a property right.

In such case it is not necessary for the landowner to prove that the rental value of the property has been diminished by the railroad tracks, but he is entitled to recover for a diminution in its market value.

Plaintiff was the owner of a lot of ground abutting for about three hundred feet on a public street in Baltimore City, the bed of which was owned by the municipality. The lot was unimproved and unusued and was elevated above the street level. The street itself was not used as such and was not curbed. Three tracks of the defendant railroad company were laid on the street, leaving a space of about twenty-four feet in front of plaintiff's lot between the nearest track and where the curb would be. When that was the situation of the property, the defendant company, acting under the authority of a municipal ordinance, laid on the street an additional track, leaving between it and the sidewalk line in front of plaintiff's lot only a space of some ten feet, and also raised the roadbed of the street, the result of which was to make impossible any use of the street at that point. In an action to recover damages for the injury to his land so caused, the plaintiff's evidence was to the effect that his lot had a certain market value before the construction of the additional track; that such construction destroyed access from the street, and

in order to obtain access, it would be necessary to devote a part of the lot to that purpose, and that the land remaining afterwards would have a certain market value less than previously. *Held,* that the plaintiff is entitled to recover damages for the injury to his property thus caused; that this evidence is legally sufficient to show the extent of his loss, and that it was not necessary for the plaintiff to prove a diminution in the rental value of the lot, but that proof of the diminution of its market value is sufficient.

*Decided December 2nd, 1910.*

Appeal from the Superior Court of Baltimore City (HARLAN, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and PATTISON, JJ.

*Randolph Barton, Jr.,* for the appellants.

The fact that the street had not hitherto been used for street traffic, did not preclude the possibility or probability that it might when occasion arose, be so used. As long as the unobstructed space was there available for traffic purposes, the ability to use this space continued, merely awaiting the time when the city, and especially the abutting lot owners, found it desirable or necessary to do so. The value of the "right of way," which the plaintiffs' property enjoyed in this space along its front, consisted in the right to use, and was not dependent on the question whether that right were then actually being availed of. The impairment or destruction of a right of way appurtenant to improved property, is an actual damage to that property and substantially affects its value,—that is, its potential selling or usable value,—precisely as the possession of any easement is a valuable right, the loss of which must constitute an injury, whether at that time the easement was actually being utilized or not. It was not necessary that the plaintiffs should have sold or leased

their property in order to establish the extent to which it had suffered from the loss of the use of the abutting street,— but that if they can show that the market value of it, while still in their hands, was impaired by the new use made of the street, they could use that as a·basis of their claim; and that in this instance they have shown an impairment of market value. Of course the question is not whether the Court, sitting as a jury, agrees with the witnesses, either as to the market values testified to by them or as to the extent to which the new track is responsible for the alleged depreciation. It is purely a question whether, conceding all the evidence to be true and accurate, it is sufficient to support any recovery.

It does not require an expert to prove that impairing or destroying the access to a piece of property is damaging to it; any more than it would require expert testimony to prove that shutting off air or light, or taking away any other easement or privilege from property, is injurious to it. It might even be questioned whether witnesses would be permitted to testify to a fact so patent to everyone. *Western Union Tel. Co.* v. *Ring,* 102 Md. 681.

Although this Court has said that it is permissible, though not necessary, to prove by witnesses, that smoke, noise, cinders, etc., injure the property reached by them. *Belt Line R. R.* v. *Sattler,* 100 Md. 333.

Even the mere narrowing of the space available for vehicles would be injurious, much less the practical destruction of it. Of course the exact nature and extent of the obstruction or monopolization of the street by the railroad is material in determining how much injury is caused, but for the purpose of this appeal it is immaterial how great the damage is, if there is any damage.

Defendant seems to confound the question whether, before the laying of this new track, the street was physically usable as a street, with the question whether it was legally so usable.

That the street was legally a street, with all the usual rights therein in the abutting property owners, is admitted. The abutting property owners had all the rights therein that are usually enjoyed by abutting owners. The legal status of the street differed from that of other streets only to the extent that by previous ordinances the city might have granted special privileges therein to the defendant company. It had the right to grant such privileges (Art. 23, Sec. 255), and the abutting property owners had the corresponding right to recover damages every time the city permitted the railroad to monopolize an additional part of the street. But to the extent of the space that remained—some 30 to 36 feet—the rights of the city and of the abutting owners remained unimpaired. Of course if there were already some legal ground on which the abutting property owners could have been prevented from using or were unable to use the street, no damage would be caused them by the putting it to its present use.

The defendant's argument, however, rests purely on the physical condition of the street, and this is purely a question of degree. The space was there, unoccupied. By merely filling in the ditch, which would naturally be done anyhow when the property was graded, the space would have readily been made fit for vehicle travel and thus put in precisely the same condition as the other parts of Ostend street, where a driveway exists between the tracks and the abutting property. It is of course legitimate for defendant to argue that the obstruction or deprivation of an unpaved way such as this is not as great an injury as if it were a much-used, well-paved avenue, but that goes to the question of the amount of the injury, not to that of its existence. Furthermore, it will be remembered that this is a factory neighborhood, where the value of the street to abutting property depends chiefly upon the access which it affords, it being much less material than it would be in a residence neighborhood

whether the street was a smoothly paved one or was adapted for pleasure purposes. For factory purposes it made little difference whether there was a railroad in operation on the opposite side of the street, provided the street immediately adjoining the property in question afforded an ordinary way out for the property by which access to it in vehicles might be had.

So far as the proof indicates, the track is a fixture as permanent as are the three hitherto laid there. Under these circumstances, the damage consists not in the inconvenience suffered by the owner while the track has existed, but in the depressing effect it has on the value of the property in the eyes of future purchasers or users.

The injury is in its nature a permanent one, just as was that caused by the building of a dam in *City of Baltimore* v. *Merryman,* 86 Md. 584, in which case the Court allowed recovery for the permanent diminution in value. It was not such a "temporary and abatable nuisance" as was the case in *Carroll Springs Co.* v. *Schnepfe,* 111 Md. 420, where the damage being merely that temporarily caused by the smoke, odors, etc., from the distillery, the Court said that the measure of damages was the annoyance and loss caused up to time of bringing the suit, and not the difference between the value of the plaintiff's land before and that after the injury complained of. A further illustration of this distinction is found in the case of *Western Maryland R. R.* v. *Martin,* 110 Md. 564, where this Court allowed evidence of permanent depreciation in the value of plaintiff's land due to the construction of a railroad culvert. This is the general rule. See 29 *Cyc.,* 1275.

That the laying of a track such as this is to be treated as permanent in its effect is practically declared by our statute.

Code, Article 23, section 255, provides that the abutting property owner in such cases can recover his damages, provided he sues within two years from the completion of the

track. Manifestly this recognizes the injury not as a "temporary, abatable one," but as a permanent one, to be paid for once for all or not at all.

The case is almost precisely analagous to that of *Lake Roland El. Ry. Co.* v. *Frick,* 86 Md. 259, where the Court (plaintiff's first prayer), allowed the jury to consider the depreciation in market value of the property.

The practical hardship that would result in this case from any other view is apparent on reflection. As has just been pointed out, the statute (Article 23, section 255), while allowing an action to be maintained by any one injured by the laying of such a track, limits the time for bringing suit to two years. If suit were brought under the common law, in accordance with *O'Brien* v. *Belt R. R.,* 74 Md. 375, there would also be applied a Statute of Limitations to the right of an owner to sue for damages caused by the laying of such a track.

If, therefore, plaintiffs could not establish an injury until they could show that they actually wished to use the street, their right would doubtless be barred by limitations before they were able to sell or improve. When they did get ready to develop the property they would find that they had waited too long to sue for the injury caused by loss of its means of access.

How can the Court say, as matter of law, that there is no legally sufficient evidence of damages? Is not the Court practically usurping the jury's functions in doing so? When we analyze the methods by which the witnesses state that they arrive at their conclusions, these certainly seem logical and reasonable. After all, a criticism of their reasons merely goes to the weight of their testimony—to its accuracy and credibility. But as a matter of fact, in what other way would it be possible to prove the "value" of an unimproved, undeveloped lot? We cannot prove offers (102 Md. 679) as evidence of value. What else would any witness say when

asked to value a piece of vacant ground? The witnesses simply did what this Court says they may do. *Belt Line R. R.* v. *Sattler,* 102 Md. 602.

*Duncan K. Brent* (with whom was *Allen S. Bowie* on the brief), for the appellee.

Ostend street at the point in question at no time, has ever been used for street purposes, or as a thoroughfare, or has it been even possible to drive a wagon along it. Such being the case under the undisputed evidence, how can the plaintiff say that he has been damaged by the taking away from him a thing which has never existed? It is true that Ostend street is a street, and can at any time be improved for street purposes by the Mayor and City Council of Baltimore, but up to this time it is not a traveled street. Practically it is no street at all, and has never been in a condition to be used as such. If, therefore, it has never been possible to use any portion of the street bed at this point for the passage of vehicles, how can the plaintiffs' property have been cut off from such use of the street, so as to be at this time injured and depreciated in value? It is hard to see how, under these facts, the plaintiffs' property has been injured at all. The whole case was tried, however, on the theory that before the new track was laid Ostend street was an actually used thoroughfare and driveway. For example, the witness Newbold distinctly says that he values the plaintiffs' property at $3 a front foot before the new track was laid because it fronted on a 24-foot driveway in Ostend street. Hurst, the other expert for the plaintiff, also frankly says that the value which he places on the property before the new track was laid is based on the supposition that Ostend street was a street capable of being used by wagon and traffic.

If it can be held that the plaintiffs' claim for damages is not limited to existing present damages, but also covers such damages as may arise in the future, we do not see how a Court of law can at this time deal with the question of such

damages without entering the dimest realms of speculation. It will not do to say, that while it may be true our property has not been damaged up to this time by reason of the laying of the new track, yet when the Mayor and City Council open Ostend street to traffic so that it can be used as a thorough- fare, then the new track will actually deprive us of egress and ingress to our property, and be a real obstruction to the traffic of the street, all of which will depreciate our property.

PEARCE, J., delivered the opinion of the Court.

The appellants, being tenants in common of two adjoining unimproved lots of land in the City of Baltimore, brought this suit at law against the appellee, the Baltimore and Ohio R. R. Co., for alleged injury to their fee simple estate in said lots of land, resulting from the laying by the appellee of an additional track on Ostend street upon the north side of which street said lots abut.

The declaration alleges that Ostend street is a public high- way upon which for many years the appellee has maintained its railroad tracks in front of the plaintiffs' said property, and on which it operated a steam railroad, but that the north- ern part of said street, for a width of about twenty feet, has been until recently, unobstructed by tracks, or in any other manner; that recently in virtue of an ordinance of the Mayor and City Council of Baltimore, the defendant has laid an additional track on the north side of said street immediately in front of the appellants' said property, and has raised the roadbed of the street under said track which is to be used in operating the trains of the appellee; that in consequence thereof the general public has been entirely obstructed from the roadbed of said street in front of the appellants' prop- erty for the whole distance between Russell and Ridgely streets, and it is not possible to use any portion of said street bed in front of their property for the passage of vehicles; that thereby their property has been entirely deprived of the use of Ostend street for the passage of vehicles, and its value

greatly injured and depreciated, not only by such obstruction of the street, but also because the trains of the appellee will be much nearer to their property, with greatly increased noise, dirt and danger, affecting its rental as well as its *salable* value; and that though the said ordinance authorized said obstruction, yet by the express terms of the Code, Art. 23, sec. 255, the appellee is liable in damages for the injury occasioned by such location of said track.

The appellee pleaded that it did not commit the wrong alleged, and the case was tried before the Court without a jury, resulting in a verdict for the defendant under the instruction of the Court, and from the judgment on the verdict the plaintiffs have appealed.

It was admitted that the plaintiffs had title to the property in question, and that Ostend street was a street owned by the Mayor and City Council, with a right of control over it by them, and a copy of the ordinance referred to was admitted in evidence authorizing the laying of the track in question. It was also admitted that the track on Ostend street between Russell and Ridgely streets was laid between May 1st and December 1st, 1908.

Mr. Sutton, a surveyor who made a plat of the *locus in quo* used in his examination, testified that there were three tracks in use at that point before the laying of the track in question, making now four in all, of T rail construction, and so laid that wagons cannot use the part where the tracks are laid; that the plaintiffs' lots at that point are not graded, being elevated above the street, and that there is an open ditch some fifteen feet south of the north side of Ostend street, and no sidewalk or actual roadway, but a slope from the ends of the cross-ties of the new track to the bottom of the ditch, and from thence a slope up to the north building line of Ostend street; that it is 66 feet from the north rail of the new track to the north building line of Ostend street, and that the rule has always been to allow one-fifth of the

total·width of the street for a sidewalk on each side, leaving three-fifths for the roadbed between the curbs, and that he had known Ostend street for twenty-five years, and has never at anytime seen it used as a street between Russell and Ridgely streets; there are no houses on Ostend street between Russell and Ridgely, but west of Ridgely there is a row of houses on the north side of Ostend street set back a few feet from the building line, with a narrow brick walk in front. East of Russell street, Ostend has not been opened for passage of vehicles north of these tracks, but south of the tracks there is a travelled way, part of which he thinks is on private property.

The plaintiffs then called Messrs. David M. Newbold, Jr., and John J. Hurst. Mr. Newbold is an attorney, associated with his father in real estate development in Baltimore City, and has known the property in question since 1905, and has frequently examined the property, and kept in touch with sales in that neighborhood, as the representative of the plaintiffs. Their property fronts 310 feet on Ostend street. One-half of this frontage runs back 264 feet on Ridgely street to Stockholm street, and the other half runs back on Russell street 100 feet towards Stockholm street. The property in the rear of this latter half on Stockholm street is the only improved property in that block and does not belong to the plaintiffs. Mr. Newbold said he knew the value of this property May 1, 1908; that 264 feet on Ridgely and 100 feet on Russell, 364 feet at $3.00 a foot capitalized, is $50, about $18,200. That was a fair value at that time. Property in that neighborhood has sold from $2.00 to $4.25 a front foot. This property is adapted for factory or commerical purposes, or for dwellings. It would cost about $3,000, or fifty-five cents a foot, to grade it, and he took that in account in his estimate of $3.00 a foot. After the new track was laid the property was worth about $15,800. Before that, there was about 24 feet between the former north track and where the

curb would be, affording adequate space for a wagon to drive
between the track and curb, and to load and unload. Now
the space is reduced in one place to ten feet. He estimated
that after the blocking of the street by the new track, in order
to restore the twenty-four foot space between the old north
track and the place for the curb, it would be necessary to
take off fourteen feet of the property on Russell and the
same on Ridgely streets, thus moving back the whole Ostend
street front. This reduces the combined frontage on Ridgely
and Russell streets from 364 to 336 feet, or twenty-eight
feet, which at the former valuation of $50 a foot, makes a
loss in value of $1,400, to put the property in the same rela-
tion to Ostend street which it bore before the new track was
laid.

Mr. Hurst is also an attorney devoting most of his time
to real estate development and admitted by the defendant to
be an expert in that line. He knows this property and owns
three houses on the south side of Ostend street west of War-
ner street which is the next street east of Russell. He testi-
fied that if he owned the plaintiffs' property he would set
aside from Ostend street enough to make up what was taken
from the bed of the street by the railroad's last track, and
would arrive at the value of that by valuing the amount of
land left. His method of valuation was not precisely the
same as Mr. Newbold's, but the result was the same, viz, a
loss of $1,400.

Upon this testimony the plaintiffs rested, whereupon the
defendant offered, and the Court granted, the following
prayer:

"The defendant prays the Court to rule as a matter of
law, that under the pleadings in this case there has been of-
fered no evidence of damages to the property of the plain-
tiffs *of such a character as to be* legally sufficient to entitle
the plaintiffs to recover, and therefore its verdict must be for
the defendant."

The exception to this ruling presents the only question raised by the record.

.The position of the defendant in its argument has, as we think, been correctly epitomised in the appellant's brief in these words: "The street at this point was not actually in use as a street, but was devoted exclusively to railroad purposes as fully as though it were a private railroad right of way. The plaintiffs' property never had used it, could not use it, unless some filling up of the ditch was done, and might never have occasion to use it. The plaintiffs' property was unimproved before the new track was laid and is unimproved now. It has not changed hands or been sold or leased, since, and there is no sufficient proof either that the new track has depreciated its value, or if so, to what extent the depreciation has gone."

We think that view of the situation leaves out of consideration the primary purpose for which streets are opened and laid out, and the obligation of the municipal authorities to preserve the beneficial enjoyment of the streets by the abutting landowners as a constituent part of the general public. In *Lake Roland El. R. R. Co.* v. *Baltimore City,* 77 Md. 377, JUDGE BRYAN said: "The control of the city over the streets is attended with the duty of preserving them for their legitimate purposes. They are intended for the passage of people over them, on foot, on horseback and in vehicles, on their various occasions of business, convenience, or pleasure. It is not competent for the city to defeat the primary purpose for which they were dedicated to the public use"; and JUDGE ALVEY, in an opinion in the same case overruling a motion of the appellant for a reargument, said: "The primary use of the streets is not, by any means, that of furnishing tracks for street railways. The Mayor and City Council cannot divest themselves of this trust, nor can they so restrict their power over the streets as to defeat, or seriously impair, the beneficial enjoyment of the streets by the public in the ordinary and usual modes of passage thereon." That case was

approved in *Poole* v. *Falls Road R. W. Co.,* 88 Md. 538, and in *C. and P. Tel. Co.* v. *Baltimore,* 89 Md. 710, and the principle thus declared we do not understand to be questioned by the appellees, though its application to the case at bar is apparently denied. As will be seen hereafter, however, we are of opinion that it has direct application to this case, and that it may be regarded as conclusive of this plaintiff's right to recover.

We have given very careful consideration to the cases relating to the recovery of damages for cutting off access to one's property, and especially in reference to the *character* of proof which will warrant recovery in such cases, though the appellees have not cited either in their brief or in the oral argument any authorities for their position, but have contented themselves with the statement of general principles deemed by them to be applicable and controlling. It is of course understood that for any injury to real property the plaintiff must, as in other cases, produce evidence to show the extent of loss, as a basis for the assessment of damages, beyond nominal damages, and we think that has been done in this case. We have found one case which apparently sustains the view of the defendants' counsel in this case, and we will briefly refer to it here. In *Rumsey* v. *New York and New England R. R.,* 133 N. Y. 79, the plaintiff was the owner of a parcel of land with a front of about 1,000 feet on the Hudson river, upon which was a brick yard, and the bricks made on the premises had been for many years hauled to the river shore and there loaded upon vessels for shipment to market. This use was discontinued about 1875, and thereafter there were on the premises no buildings or machinery for brick making. In 1881 the defendant constructed a new roadbed along the plaintiffs' whole front, the effect of which was to cut off the plaintiffs from access to the river from their lands. The Court held "that the proper measure of damages in such a case is the diminished *rental or usable* value of the property as it was, in consequence of the loss by

the defendant's acts of access to the river, in the manner enjoyed by the owner prior to the construction of the embankment across the water front by the defendant. The plaintiffs cannot be permitted to prove, or allowed to recover damages that they might have sustained, if they had put the property to some other use, or placed other structures upon it. The damages could not be based upon the *rental or usable* value of the property for a brick yard, any more than they could be based upon their use for some other specific or particular purpose to which they were not in fact put by the owners. The question is, what damages did the plaintiff in fact suffer by having the access to the river cut off? Not what they might have suffered had the land been devoted to some particular purpose to which it was not put. The proof of damages on the part of the plaintiff consisted entirely of the opinions of witnesses as to the *rental* value of the land in the absence of the structure built by defendant. This proof was competent as far as it went, but it did not establish the legal measure of damages. It should also have been shown what was the *rental or usable* value of the premises as they were with the obstruction which interfered with the access to the river, as the difference in these two sums represented the actual loss caused by the defendant: * * * The method adopted of establishing the plaintiff's damages demands a reversal of the judgment."

The Court in that case, however, proceeded to say that there was no distinction to be made between the rights which pertain to an owner of land upon a public river, and one upon a public street, and declared its approval of a long line of decisions in that State, holding that an owner of land abutting upon a public street, has "a *property right* in such street for the purposes of access, etc., * * * and that when a railroad laid in said street, without condemnation proceedings, injuriously affects such property right, it is responsible for any damage resulting therefrom."

If the above case is to be understood as meaning that rental and usable value *in that case* were equivalent terms, and as excluding saleable or market value in such cases, we cannot adopt such limitation of proof of damage. If, on the other hand the case is not to be so understood, and usable value was to be understood as saleable or market value, then the proof made in the case before us conforms to that understanding, and that case cannot be regarded as an authority against the plaintiffs' right to recover in this case.

But if it were conceded to be adverse to the right of recovery in this case, we could not adopt it as authority without departing from the principles established in decisions in this State which we regard as sound and as applicable to the case before us.

In *Lake Roland El. R. W. Co.* v. *Webster,* 81 Md. 529, the appellee rented from Wm. H. Birch a lot on North street, in Baltimore City for a term of five years at the annual rent of twelve hundred dollars. The elevated railroad was in the middle of the street, not directly in front of the rented premises, but beginning twelve feet from the Northern boundary. The lot was occupied by a livery stable kept by the plaintiff, and he rented the property for that purpose. After the completion of the elevated structure the landlord reduced the rent to nine hundred dollars. But the plaintiff, contending that this reduction did not measure his loss, sued the railway company and obtained a judgment for $1,000 which was affirmed on appeal. The trial Court granted the following prayer to the plaintiff: "If the jury shall find from the evidence that the rental value of the premises occupied by the plaintiff as tenant of Wm. H. Birch under the written lease offered in evidence, has been diminished by the construction and use of the elevated railway of the defendant corporation on North street, then the plaintiff is entitled to recover, and the measure of damages is the amount which the jury shall find said rental value has been so diminished."

In passing upon this prayer the Court said: "If the jury found that the *usable* value of the property was destroyed or diminished by the cause alleged they were justified in finding a verdict for the damage done. Great exception is taken to the language of this prayer. But it seems to us that its fair meaning is that the jury are to find the damages which the plaintiff sustained, as tenant of the premises, by the diminution of its rental value. It could not easily be construed as meaning that they were to find the damages which the landlord had suffered.". We have referred to this prayer, and to the language of the Court in considering it, because it emphasises the distinction between that case and present case, and because the Court in italicising the word *usable,* in its consideration of the prayer, indicates clearly that if the landlord, the owner of the property, had been suing in that case, he could not have been limited in his proof to the usable value of the property in the condition in which it then was, as apparently held in the *N. Y. case, supra,* and as contended by the appellees in this case; but could have recovered the damages which *he* suffered, namely, the diminished saleable value.

In *Lake Roland Co.* v. *Frick,* 86 Md. 259, Robert Garrett was the owner in fee of a vacant lot on North street, and the elevated railway was in front of a portion only of this lot, and impaired the access thereto, thus diminishing its value. The plaintiffs' first prayer which was granted, after setting out the necessary preliminary facts, instructed the jury "and if they shall further find that the said structure in front of said lot impaired the access to said lot originally afforded by said street, and rendered the said lot or some part of it less advantageous for building purposes than it was previously, and made the *market .value* of said lot in the lifetime of said Robert Garrett less than it would have been if said structure had not been so erected in front thereof, then the plaintiffs are entitled to recover in this action

the amount of such depreciation thereby given to said lot."
The testimony upon which that prayer was based was the
testimony of A. L. Gorter, who said he knew the market
value of the lot before the railroad was built, and its market
value after it was built, and that after it was built, its value
was diminished to the extent of $15,000. Other witnesses
also testified to the diminution of value by the construction
of the railroad. There was a verdict for the plaintiff, and
judgment thereon, which was affirmed on appeal.

We can discover no material distinction in principle be-
tween that case and the present. We may assume, that North
street was a more improved street than Ostend street, at the
point where the present plaintiffs' property is situated; that
there were houses and sidewalks on North street at that
point, and that the bed of the street was paved with some
material. There may have been better and more convenient
use of the street, and access thereto from the abutting prop-
erty on North street, but that would go only to the quantum
of injury, and would not distinguish the cases in principle.
The *right* of access is the test of the *right of action* in such
cases.

The character of the testimony given in the present case
by Messrs. Newbold and Hurst was the same as that given
by Mr. Gorter in the *Lake Roland case.* Both went to the
diminished market value of the property. The method of
arriving at the amount of damage done, pursued by Messrs.
Newbold and Hurst, we do not think was open to objection,
and it was admitted without objection. We think it a
natural and legitimate mode of estimating the damage. There
was evidence tending to show that the construction of the
additional track destroyed the right of access to plaintiffs'
property on that street, and certainly, *one* legitimate method
of ascertaining the resulting damage was to ascertain what it
would cost the plaintiffs to restore the means of access by
devoting a part of their property to that purpose. In 8

*Amer. and English Enc.,* 2nd Ed., 547, note 8, it is said that where the case admits of it, the injured party may resort to different means of arriving at the result, to be judged of by the jury under proper instructions.   Thus in *Seely* v. *Alden,* 61 Pa. St. 302, where damages were claimed as the result of the deposit of tan bark in a mill pond, the damages were held measurable either by proof of the difference in value of the property with, and without the deposit, or by the cost of its removal and the restoration of the property to its former situation.

And in *Gas Light Co.* v. *Colliday,* 25 Md. 1, where the action was for damages by severing the pipe which conveyed gas to the property of the plaintiff, it was held the jury might consider the diminution of value of the property for sale or lease and the cost of restoring the premises.

For the reasons stated, we think there was error in granting the prayer withdrawing the case from the jury.

> *Judgment reversed and new trial awarded with costs to the appellants above and below.*