HENRY L. BRACK, AND EMMA BRACK, HIS WIFE.

*vs.*

THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Condemnation of land: compensation; market value; special
value; available for particular purpose; award to be in
money; special reservation of privileges to property
owner, to abate damages, not allowable.*

The just compensation to which the landowner is entitled,
where part of his land is taken for a public use, includes the
value of the ground condemned, and a due allowance for conse-
quential damages, if any, to the remainder.          p. 381

With respect to the property taken, the award must be based
upon the actual market value at the time of the condemnation.
                                                     p. 381

The market value of the land is to be estimated in reference
to the uses and purposes to which it is adapted, and any spe-
cial features which may enhance its marketability may prop-
erly be considered.          .                       p. 381

The question is not what the property is worth to the con-
demning party, but is confined to the question of what could
probably be realized from its sale to any purchaser who might
desire it for any or all of the purposes for which it is available.
                                                 pp. 381, 385

Witnesses and jurors should not be permitted to enter the
realm of speculation and swell damages beyond a present cash
value under fair conditions, by fantastic visions of the future
needs of growing communities.                        p. 388

The duty of the jury, in condemnation proceedings, is to
award compensation to the property owner in money, and they

can not, in lieu thereof, impose conditions upon the party con-
demning, or require the property owner to accept certain privi-
leges.                                                    p. 389

*Quære*: Whether, in condemning water rights, it is proper
for the Mayor and City Council of Baltimore to reserve to the
property owner the right of pasture and water cattle, in the
remainder of the land, through which flowed the water it then
condemned.                                                p. 390

*Decided February 17th, 1915.*

Appeal from the Circuit Court for Baltimore County.
(Duncan, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke,
Thomas, Pattison, Urner, Stockbridge and Constable,
JJ.

*Wm. J. Ogden* and *Frank Gosnell,* for the appellants.

*S. S. Field, the City Solicitor,* for the appellee.

Urner, J., delivered the opinion of the Court.

This is a condemnation proceeding for the acquisition by
the City of Baltimore of certain land of the appellant, in
Baltimore County, included in the area required for the
storage and protection of a new water supply for the City
to be impounded by an extensive dam in the valley of the
Gunpowder River. The tract condemned contains about
forty-four acres. It embraces the middle portion of the
appellant's farm of one hundred and ninety acres, and lies
along a stream called Peterson's Run, which, for the greater
part of its course through the farm, will be absorbed in the
waters of the reservoir. By the appropriation of ground
in this proceeding the remainder of the appellant's land will

be divided into two disconnected tracts of approximately equal acreage. The buildings are located at the eastern end of the farm, and an outlet is provided by a roadway extending through the property to a public thoroughfare beyond its western limits. This private way crosses Peterson's Run by a bridge not far below the point where the stream enters the farm, but the land taken by the City will be necessarily flooded to such an extent as to prevent the use of the road way and bridge at their present level. The condemnation of the intersecting tract, which is proposed by the petition to be acquired in fee simple, would also in itself have debarred the landowner from the use of the customary outlet, but it was provided by an amendment to the petition that the property required should be condemned subject to the obligation upon the part of the Mayor and City Council of Baltimore to construct a suitable bridge over Peterson's Run, and a suitable road from each side of the bridge to the outlines of the property sought to be condemned, along the line of the present way, the new road and bridge to be equally as good as those now existing, and to be at a sufficient elevation to furnish a safe and solid roadway connecting the separated portions of the farm, and to be for the perpetual use and benefit of the owners of the remaining land, by whom, however, it was to be maintained. By the same amendment it was further stipulated that the condemnation should be subject to the reservation in behalf of the landowner, his heirs or assigns, of the right of access to the Run above the roadway for all domestic purposes, including the cutting of ice and the right to have live stock, except hogs, resort to that portion of the stream.

The petition was thus amended, by leave of the Court, after the jury had been impaneled and had viewed the premises. Objection to the amendment was taken by a motion *ne recipiatur,* which was overruled; and a formal exception to this action was reserved and constitutes the first bill of exceptions in the record. The appellant complains of the modification referred to mainly on the ground that it is

inconsistent with a condemnation in fee simple, to which the proceedings are in terms directed, and seeks to accomplish by the provisions stated the partial satisfaction of damages which are claimed to be legally demandable as a whole in money.   Other exceptions were reserved to the refusal of the Court below to allow the defendant to show that the land being condemned has special features which give it an independent value as a reservoir site.   The appeal by which the questions we have indicated are brought before us for determination has been taken by the defendant from a judgment entered upon the inquisition as returned by the jury awarding him damages to the amount of $15,967.00.

In the argument of the case in this Court the subject first considered was the propriety of the exclusion of evidence as to the adaptability of the land for reservoir purposes, and we will adopt the same order of discussion.

The just compensation to which the landowner is entitled, where part of his land is taken for public use, includes the value of the ground condemned and a due allowance for consequential damages, if any, to the remainder.   *Patterson* v. *Baltimore,* 124 Md. 153; *Baltimore* v. *Megary,* 122 Md. 20; *Baltimore* v. *Garrett,* 120 Md. 608; *Ridgely* v. *Baltimore,* 119 Md. 567.   With respect to the property taken the award must be based upon its actual market value at the time of the condemnation.   *Norris* v. *Baltimore,* 44 Md. 607; *Moale* v. *Baltimore,* 5 Md. 314; *Tide Water Canal Co.* v. *Archer,* 9 G. & J. 479.   The rule is that the market value of the land is to be estimated with reference to the uses and purposes to which it is adapted, and that any special features which may enhance its marketability may properly be considered.   But the fact that the land is needed for the particular object sought by the condemnation is not to be regarded as an element of the value to be ascertained.   The question is not what the property is worth to the condemning party, but what could probably be realized from its sale to any purchaser who might desire it for any or all of the purposes for which it is available.

382     BRACK vs. M. & C. C. OF BALTO.

Opinion of the Court.                    [125

In 15 *Cyc.* 757, it is said: "The true rule is that any use for which the property is capable may be considered, and if the land has an adaptability for the purposes for which it is taken, the owner may have this considered in the estimate as well as any other use for which it is capable. Thus, in proceedings to condemn land for railroad purposes, for a bridge site, or for a reservoir or water supply, it may be shown that the land has an especial availability which would render it valuable to any one who might wish to purchase it for railroad purposes, for a bridge site, or for the purpose of a reservoir or water supply, and the owner may insist upon this availability of his land for the particular purpose as an element in estimating its value."

In *Mississippi and Rum River Boom Co.* v. *Patterson,* 98 U. S. 403, where three islands in the Mississippi River were being condemned for use in the construction of a boom, and the owner desired to have their special availability for such use considered in the estimate of his damages, it was said: "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses."

It was held in *Sargent* v. *Merrimac,* 196 Mass. 171, where a landowner was seeking compensation for property taken as a source of municipal water supply, that: "The market value to which the petitioner was entitled was made up of the value of the land apart from its special adaptability for water supply purposes, plus such sum as a purchaser would have added to that value because of the chance that the land in question might be some day used as a water supply." The decision in *Moulton* v. *Newburyport Water Co.,* 137 Mass. 163, was to the same general effect.

In *Spring Valley Waterworks* v. *Drinkhouse,* 92 Cal. 528, it was held to be proper to show that land which was being condemned for a reservoir site was so situated as to be peculiarly adapted to such use. The same theory was adopted in the case of *Alloway* v. *Nashville,* 88 Tenn. 510, 8 L. R. A. 123, where land was condemned for a reservoir, and it was said that the market value to which the owner was entitled "includes every element of usefulness and advantage in the property. If it be useful for agriculture or for residence purposes; if it has adaptability for a reservoir site, or for the operation of machinery; if it contains a quarry of stone, or a mine of precious metals; if it possesses advantage of location, or availability for any useful purpose whatever, all these belong to the owner, and are to be considered in estimating its value. It matters not that the owner uses the property for the least valuable of all the ends to which it is adapted, or that he puts it to no profitable use at all. All its capabilities are his, and must be taken into the estimate."

An opinion delivered by LORD CHIEF JUSTICE ALVERSTONE, *in re Gough and Aspatria, Silloth and District Joint Water Board* (1904), 1 K. B. 422, approves as correct the following statement of WRIGHT, J., whose action was under review: "If there is a site which has peculiar advantages for the supply of water to a particular valley or a particular area of any other kind, or to all valleys or areas within a certain distance, if those valleys are what might be called natural customers for water by reason of their populousness and of their situation,—if the site has peculiar advantages for supplying in that sense—apart from value created or enhanced by any Act of Parliament or scheme for appropriating the water to a particular local authority, I think it may be taken that there is a natural value in the site for the purposes of water supply, and that it should be taken into consideration."

The case of *Brown* v. *Forest Water Co.,* 213 Pa. St. 440, also recognized the rule that the special availability of land for reservoir or water supply purposes is a proper element

384        BRACK vs. M. & C. C. OF BALTO.

Opinion of the Court.                    [125

of value to be proven. It was said in the opinion: "The defendant can not properly complain of the admission of evidence that the property taken by it was adapted to reservoir purposes, from the natural formation of the land, the amount of water flowing over it, and its proximity to certain towns. All these matters were elements entering into the market value of the property."

The general principle of the above citations is applied in numerous cases collected in *Lewis on Eminent Domain,* 3 ed., sec. 707, and in notes to decisions reported in *Missouri K. & T. R. R.* v. *Roe,* 15 L. R. A., N. S. 679; *Sargent* v. *Town of Merrimack,* 11 L. R. A., N. S. 996; *Brown* v. *Weaver Power Co.,* 3 L. R. A., N. S. 912, and 24 *Amer. and Eng. Annotated Cases,* 1236.

In the case of *Callaway* v. *Hubner,* 99 Md. 529, this Court, in passing upon exceptions to the ratification of a sale of land reported by trustees, and in determining whether the sale was improvident, had occasion to consider the availability of the property for reservoir purposes as entering into the market value, and as affecting the question as to the propriety of the sale, which had left that element out of view. The opinion by JUDGE PEARCE cited and quoted from the decisions in *Matter of Furman Street,* 17 Wendell, 669; *Young* v. *Harrison,* 17 Ga. 30, and *Boom Co.* v. *Patterson,* 98 U. S., *supra,* in support of the proposition that the availability of property for particular uses should be taken into consideration when its value is being estimated. It was accordingly decided that the value of the land as a reservoir site should have been considered by the trustees, and that as they sold the property in disregard of the special advantage which it thus possessed, and at a much lower price than might otherwise probably have been obtained, the sale could not be approved. It was remarked that the trustees had made no effort to sell the land to the City of Baltimore, although they knew it was in the market for a reservoir site in that locality, and disposed of the property as if it were

ordinary unimproved ground. In this connection it was said, in the language of the lower Court, which was quoted with approval: "Had the city proceeded by condemnation (as it might have done), the peculiar value of this land as a reservoir site would have been a fact to be considered by the jury in assessing its value."

The case of *McGovern* v. *New York,* 130 N. Y. App. Div. 350, 195 N. Y. 573, 229 U. S. 363, is cited as tending to support the opposite theory. But an examination of the decision rendered in that case, by the courts of New York and by the Supreme Court of the United States, has satisfied us that they are not opposed to the general trend of authority on the subject under inquiry. In the opinion delivered by the Appellate Division of the Supreme Court of New York it was said that the landowner, whose property was being taken as part of the site of the Ashokan Reservoir for New York City, was entitled to receive its market value for any purpose to which it was adapted. The principle was distinctly recognized that when land is shown to have a market value for some particular use, its adaptability to that use can be taken into account in the estimate of the compensation to be awarded. In that case the landowner did not attempt to prove that the value of the property had been increased by its availability for reservoir purposes before the commencement of the condemnation proceedings. It was pointed out that there was no evidence "of any circumstance by which the value of the parcel in question, as a part of a natural reservoir site, could be estimated or determined." In the absence of such evidence it was held that the owner had received the benefit of everything which enhanced the value of his property except the increase caused by its appropriation for the use of the city. The action of the Appellate Division in sustaining the award was affirmed by the Court of Appeals of New York without the delivery of an opinion. The case was then appealed to the Supreme Court of the United States upon the question as to whether the ruling

386    BRACK vs. M. & C. C. OF BALTO.

Opinion of the Court.                [125

on the measure of compensation amounted to a taking of property without due process of law. This question was answered by the Supreme Court in the negative, and MR. JUSTICE HOLMES, who delivered the opinion, observed: "The enhanced value of the land as part of the Ashokan Reservoir depends upon the whole land necessary being devoted to that use. There are said to have been hundreds of titles to different parcels of that land. If the parcels were not brought together by a taking under eminent domain, the chance of their being united by agreement or purchase in such a way as to be available well might be regarded as too remote and speculative to have any legitimate effect upon the valuation."

It is apparent, therefore, that the case last cited is consistent with the theory of the other decisions refered to that any particular capability which actually enhances the value of the property independently of the demand created by the condemnation, should be considered in the estimate to be made of the market value which constitutes the measure of compensation. In the case now before us the defendant offered to prove the existence of such a condition with reference to the land involved in this proceeding. It was testified by the Sanitary Engineer of the State Board of Health that he had examined the defendant's property in respect to its contour and drainage, and it was then proposed to prove by the witness that by reason of the topographical features of the ground a storage reservoir could readily be constructed there with a capacity of 1,200,000,000 gallons, that there was a market at that time for such a reservoir, that the site will be destroyed by the taking of the property sought to be condemned, and that the land has an independent value as a reservoir site. The reason for the exclusion of the evidence thus proffered is not indicated in the record, but the argument against its admission was that the land in question could not have any value as a reservoir site, apart from the object of the present condemnation, because its owner would have no right to impound and distribute the waters of the

stream flowing through it without the consent of the City of
Baltimore as the lower riparian proprietor, and that as the
City needs the stream as a source of supply for its people,
the storage of the water for the use of other consumers
would be legally impracticable. In order to sustain this
contention we should have to hold in effect that the evidence
offered to be introduced, though theoretically admissible
under the rule we have discussed, must nevertheless be
excluded in this instance on the ground that the special ele-
ment of value to which it refers could not possibly have any
existence in fact, and is, therefore, incapable of being proven.
The record, however, does not justify such a conclusion. It
affords us no sufficient reason for making a formal and final
declaration that the defendant's land cannot conceivably
have any peculiar availability for the purposes of a reservoir
in view of the acquisition by the City of the rights of a lower
riparian owner. It would not seem reasonable to hold that
land situated on a watercourse can under no conditions have
any inherent value as a reservoir site unless it is held under
a common ownership with all the other properties through
which the further course of the stream extends. If it·affir-
matively appeared that the use of the tract in question for
such a purpose would necessarily have involved an invasion
of the riparian rights of the City, which it has held for
many years, there could be no difficulty in eliminating the
element of reservoir value from further consideration. But
the proffer is distinctly made to prove that the land has an
*independent* availability for such use, and the record does
not conclusively show that competent evidence to that effect
could not be adduced. If we were to preclude the inquiry
which the defendant proposes on that subject, we could not
be certain, as the case is now presented, that his rights were
receiving the full measure of recognition to which they may
be justly entitled. In our opinion, the defendant should have
the opportunity he desires to prove, if he can, that the prop-
erty being condemned has an independent value and market-
ability as a reservoir site. If testimony had been allowed

388    BRACK vs. M. & C. C. OF BALTO.

Opinion of the Court.                    [125

to be introduced for that purpose, and had appeared to be merely speculative or otherwise legally insufficient to support the theory upon which it was admitted, it could have been stricken out or withdrawn from the consideration of the jury by suitable instructions.    As CHIEF JUSTICE RUGG said in *Smith* v. *Commonwealth,* 210 Mass. 259, where a somewhat similar question was under discussion: "Witnesses and jurors should not be permitted to enter the realm of speculation and swell damages beyond a present cash value under fair conditions of sale by fantastic visions as to future exigencies of growing communities." But we can not determine in advance that the evidence here proffered would be too inconclusive to be considered, and we are, therefore, unable to concur in the ruling by which the offer was unconditionally refused.

The other question to be considered relates to the amendment of the condemnation proceedings by the provision we have noted reserving to the landowner, and his successors in title, a right of access to the waters of Peterson's Run at the place and for the purposes stated, and imposing upon the condemning agency the duty of elevating and reconstructing the road and bridge upon which the eastern portion of the land is dependent for an outlet to the public highway, and reserving to the present and future owners of the property a perpetual right to the use of the way thus preserved.    It was, of course, the object of these stipulations to mitigate the damages occasioned to the defendant's remaining land by the appropriation of the part required for the purposes of the condemnation.    The property taken was condemned in fee simple, and it will be flooded to such an extent as to require, as already stated, the raising of the road and bridge if they are to be further utilzied.    The effect of the amendment in this regard is not to reserve from the condemnation an existing and available roadway over the land, but to provide a new way upon a higher level in lieu of the one which the waters of the reservoir will render impassable.    Such a substitution, according to the terms of the amendment,

involves the construction of the new roadway and bridge by the City and their future maintenance by the owner of the land to which the way is intended to be appurtenant.

As the condemnation of a part of the defendant's land entitles him, in addition to the value of the property taken, to compensation for any injury to the value of the remainder resulting from the use of the condemned portion for the purposes of its acquisition, the question we are now to decide is whether the consequential damages thus accruing to the defendant can be partially satisfied by the reservation of the rights and the creation of the obligations specified in the amendment.

In *Pennsylvania R. R. Co.* v. *Reichert,* 58 Md. 261, where the question before the Court grew out of the fact that part of a lot of ground owned and occupied by a coal dealer had been condemned for a railroad right of way, and the inquisition as returned required the condemning company to erect for the lot owner a trestle to be used for moving coal, in place of one which would be removed in the building of the railroad, and imposed other conditions, it was said by CHIEF JUSTICE BARTOL to be a correct statement of the law, as quoted from *Mills on Eminent Domain,* section 112, that: "Compensation is ordinarily to be made in money, yet reservations of rights to owners are favored, and the condemning party may ratify an award, a part of which requires certain improvements to be made for the benefit of the owner. The reservation of rights to the owner is only carrying out the spirit of the law, that the public improvement shall be made with the least damage to private individuals. These conditions and reservations cannot be fixed against the will of the parties." This quotation was partially repeated in the case of *Russell* v. *Zimmerman,* 121 Md. 339.

In 15 *Cyc.* 898 it is said to be "the duty of the jury or commissioners to award compensation to the property owner in money, and they cannot in lieu thereof impose conditions upon the party condemning the property, or require the property owner to accept certain privileges." The rule is

stated to the same effect in *Lewis on Eminent Domain,* 3rd Ed., sec. 756, and has been applied in *Chicago, M. & St. P. R. Co.* v. *Melville,* 66 Ill. 329; *Central Ohio R. Co.* v. *Holler,* 7 Ohio St. 220; *Chesapeake and Ohio R. Co.* v. *Halstead,* 7 W. Va. 301; *Hill* v. *Mohawk and Hudson R. R. Co.,* 7 N. Y. 152; *Chicago, etc., R. R. Co.* v. *McGrew,* 104 Mo. 282.

In a case like the present, where part of the farm on which the buildings are located is apparently dependent for an outlet upon the roadway over the portion of the land which is being condemned, it seems entirely reasonable that the way should be preserved, if possible, in order to promote the convenience of the landowner and to reduce the extent of the consequential injury to the property. But as the defendant is objecting to the provisions which seek to accomplish that result, and as he is entitled to assume such a position by virtue of the rule stated in the decisions of this and other courts, we are unable to sustain the inquisition in its present form. Upon the remanding of the case it may be practicable to restrict the interest or area to be acquired, or modify the terms of the condemnation, so as to avoid the difficulty now presented. The brief of the appellee suggests that the objection could be obviated, and there is ample authority to permit an amendment for that purpose. Code, Art. 33A, sec. 4.

The reservation of an unrestricted right to the present and succeeding owners of the land not condemned to have their cattle resort to the waters of Peterson's Run need not be separately discussed, but it may be observed that the propriety of this provision may be open to question when applied to a municipal water supply, and the right would at all events be precarious in view of the power vested in the State Board of Health, by Chapter 810 of the Acts of 1914. to prevent the pollution of the waters of the State in so far as may be necessary for the protection of the public health or comfort.

It is urged on behalf of the City that the objection we have considered, as to the reservation and conditions created

by the amendment to the petition, was not raised in the Court below, and is, therefore, not a proper subject for review on appeal. The motion *ne recipiatur* denied the right of the City to modify the petition by inserting the stipulations in question, and the reasons assigned were that the proposed amendment was too vague and uncertian, that it was inconsistent with the petition as filed, that it was offered too late, and that it was not germane to the issue upon which the jury had been sworn. The objections thus interposed were sufficiently comprehensive to entitle the defendant to have this Court pass upon the question here presented.

The further contention is made that the damages assessed by the jury afford the defendant more than adequate compensation upon any of the theories advanced, and that he has consequently not been injured by the rulings to which he objects. There is the usual wide diversity of opinion in the testimony contained in the record as to the proper amount of damages to be awarded the defendant, but some of the estimates exceed the sum ascertained by the verdict, and we are not at liberty to rule as a matter of law, upon the evidence before us, that the allowance made by the jury was so obviously excessive from any point of view, as to render non-prejudicial the rulings we have under consideration.

There is an exception in the record which relates to the instructions granted at the instance of the City, but the questions thus raised are answered in effect by the views we have already expressed.

*Judgment reversed, with costs and cause remanded.*