BIG POOL HOLSTEIN FARMS, INC. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 548, September Term, 1965.]

*Decided January 5, 1967.*

The cause was argued before HAMMOND, C. J., and MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Joseph F. Padula,* with whom was *Martin V. B. Bostetter* on the brief, for appellant.

*Thomas S. Glass, Special Attorney,* with whom were *Robert C. Murphy, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The State Roads Commission of Maryland (the Commission) condemned a portion of the farm land of the appellant (the owner) to construct a segment of a limited access highway. By reason of the taking, a part of the farm, consisting of 83 acres, became non-accessible to the owner. The Commission, over objection, introduced evidence that after the taking it had secured an option to purchase a strip of contiguous land, which would provide adequate access to the landlocked 83 acres. Counsel for the Commission stated to the court that the Commission would exercise the option and would convey the access strip to the owner. The owner contends that the admission of this evidence was prejudicial error on the grounds that the damages caused by condemnation must be assessed as of the time of the taking, that no subsequent change in the circumstances should

be considered, and that, in effect, the Commission was attempting to compensate the owner with something other than money.

The property involved is located in Washington County. Prior to the acquisition, the property consisted of two contiguous farms, known as the East and West farms. Each farm had a set of outbuildings and the combined land area was 477 acres. The owner maintained a large dairy herd on the farms. The purpose of the taking was for the construction of Interstate Route 70, which is a limited access highway connecting the Pennsylvania Turnpike with Washington, D. C. Over 36 acres of the owner's property were taken by the Commission for the right-of-way, which is approximately 300 feet wide and cuts through the property in an east-west direction. Prior to the taking, all parts of the farm were easily accessible from the West or main farm. By reason of the taking, the owner was deprived of access from the West farm to the 83 tillable acres of the East farm. The 83 acres were bounded in part by the segment of Route 70 taken by the Commission and the lands of other property owners; other access was precluded by the topography of the land. Without access, the only value which the 83 acre tract would have is its saleability to abutting property owners.

The property was taken by the Commission on October 7, 1963. Work on the highway was commenced in March, 1964. The Commission's petition for condemnation was filed in the Circuit Court for Washington County on January 20, 1965. On June 28, 1965, several days before the trial of the case, the Commission obtained an option to purchase a tract of land 50 feet wide and 200 feet long running from the eastern boundary of the 83 landlocked acres to the Big Pool Road. This road is a main artery; there is an interchange or cloverleaf at the intersection of Big Pool Road and Interstate Route 70, near the strip of land on which the Commission obtained an option, by means of which traffic may proceed in all four directions. It is conceded that, if the owner has the use of the strip, the 83 acres will no longer be landlocked and will be entirely accessible. The right-of-way is admitted to be entirely adequate.

Counsel for the Commission told Judge McLaughlin, before whom the case was to be tried, that the State would acquire the access strip at a cost of $1,000 and wished to know whether

the owner would accept the right-of-way which the strip would provide. Counsel for the owner stated that he first wished to see the option, as the Commission had not consummated its acquisition. On the second day of the trial, counsel for the Commission advised the court that the option had been secured and a copy delivered to counsel of the owner. At a conference at which all counsel were present, the attorney for the Commission read into the record a statement that the Commission would definitely acquire the access strip. There was only one restriction in the option, that no buildings could be erected on the access strip; otherwise it would be owned in fee simple. Counsel for the Commission said that the only reason the transaction had not been previously consummated was that the option had been acquired only a few days before the trial; he committed the Commission to the purchase and stated that, after the purchase, the access strip would be conveyed to the owner.

At the trial, Mr. Miley, the State Roads' appraiser, testified that, in his opinion, the damage to the owner's property by reason of the taking was $8,390. Mr. Weber, who, with his wife, owns practically all of the stock of the appellant corporation, put a value of $120,000 on the two farms before the taking, and was of the opinion the taking had cut that value in half. Mr. Seibert, an appraiser for the owner, estimated the damage caused by the taking at $27,214. He thought that the use of the access strip to the landlocked 83 acres would be rather expensive because of the distance which would have to be traveled to the main farm building. Another appraiser for the owner estimated the damage caused by the taking at $25,775. The jury's inquisition was in the amount of $14,000.

The owner moved for a new trial. Its motion was based in part upon the court's admission into evidence of the Commission's offer in respect of the access strip. Judge McLaughlin denied the motion, stating, in a memorandum opinion, that he did so because he had concluded counsel for the owner had objected only because he was not sure that the access strip would be acquired and the right-of-way made available to the owner. The owner contends, in this appeal, that the objection at the trial went to the admissibility of any testimony in respect of the access strip, because the option had been acquired many

months after the taking and therefore could not be considered in the determination of damages caused by the taking.

We find it unnecessary to consider the nature and extent of the objection made to the testimony concerning the acquisition of the access strip because, in our opinion, the testimony as to the cost of acquisition of the right-of-way and its effect upon the landlocked 83 acres was properly admitted in any case as relevant to the measure of the damage caused by the taking.

It is true that in condemnation proceedings, the value of the property sought to be condemned and of any adjacent property of the defendant claimed to be affected by the taking is to be determined as of the date of the taking. Code (1957, 1966 Supp.), Art. 33A, §§ 4 and 5(b). See *State Roads Comm'n v. Adams,* 238 Md. 371, 376-77, 209 A. 2d 247 (1965). In a case of a partial taking, the value of what is taken is ordinarily to be determined by the difference between the fair market value of the entire tract before the taking and the fair market value of what is left thereafter. *City of Baltimore v. State Roads Comm'n,* 232 Md. 145, 152, 192 A. 2d 271 (1963).

However, when the partial taking affects the access to the remaining property, evidence as to the cost of subsequently securing adequate access has a direct bearing on the measure of the damages and, under our decisions, is admissible in the condemnation proceedings. Under the appellant's contention, the measure of damages must be the difference in value between the tract affected with access, and the tract without access. Under this theory, the owner could obtain damages for most of the value of the tract at the time of the taking, even though, after the taking, he can obtain adequate access for a fraction of the amount he has received. Such a windfall is not the fair compensation which the law envisages.

In *Webb v. Baltimore & O. R. R. Co.,* 114 Md. 216, 79 Atl. 193 (1910), the appellants owned property abutting on a public street. The appellee constructed tracks in the street, reducing its width in front of the appellants' property to 10 feet, and raised the bed of the street so that the public could not use it in front of the property. In the trial below, an action for injury to their fee simple property, the plaintiff-appellants offered testimony as to the cost of providing access to the property; the

lower court granted a directed verdict for the railroad on the ground that no evidence had been offered of damages to the property sufficient to entitle the appellants to recover. This Court reversed, saying:

> "We have given very careful consideration to the cases relating to the recovery of damages for cutting off access to one's property, and especially in reference to the *character* of proof which will warrant recovery in such cases * * *" 114 Md. at 228.

> "We think it a natural and legitimate mode of estimating the damage. There was evidence tending to show that the construction of the additional track destroyed the right of access to plaintiffs' property on that street, and certainly, *one* legitimate method of ascertaining the resulting damage was to ascertain what it would cost the plaintiffs to restore the means of access by devoting a part of their property to that purpose." 114 Md. at 232.

In the case before us, the owner relies heavily upon *Brack v. City of Baltimore,* 125 Md. 378, 93 Atl. 994 (1915). In that case, the City had condemned a part of the appellant's land for the construction of a dam; by the taking the remaining land would be divided into two approximately equal parts, with no access from one part to another. The City obligated itself to construct a suitable bridge over the river on which the property bounded with adequate roads to connect the two separated parts of the appellant's land. The petition of condemnation was amended so that the taking would be subject to the City's obligation to construct the bridge and roads, with a reservation of a right-of-way to the appellant. The appellant objected to the amendment on the ground that it was inconsistent with a condemnation in fee simple and that the City sought to pay the damages caused by the condemnation, in part at least, by means other than the payment of money. On appeal, the Court held the objection was proper, and remanded the case, saying at 125 Md. 390, "it may be practicable to restrict the interest or area to be acquired, or modify the terms of the condemnation, so as to avoid the difficulty now presented."

The case was retried. The City again amended its petition of condemnation. By this amendment, it did not obligate itself to construct a bridge and roads, but made the condemnation subject to a right-of-way of the property owner across the river. Evidence was offered by both parties as to the cost of a bridge and embankment, and the jury was authorized to consider these costs in awarding damages. On the property owner's appeal from the inquisition brought in by the jury, the Court affirmed the judgment. *Brack v. City of Baltimore*, 128 Md. 430, 97 Atl. 548 (1916). The Court said, at 434-35:

> "The owner is not required to build a new bridge and embankment, but he will get the money allowed by the jury to do with it as he sees proper. The prayers which were conceded, told the jury what damages they could allow, and there is no reason why the jury should have failed to understand the situation precisely as it existed. In this proceeding the City is not obligated to build the bridge and road, but the owner is paid in money for them and the right of way is reserved."

The second *Brack* decision is largely determinative of the case before us. Unlike the situation in the first *Brack* case, the Commission is not endeavoring to make the owner accept an access it provides in lieu of money. Like the second *Brack* case, the evidence as to the access strip and the cost of acquiring it goes only to the measure of damages caused by the taking. That the Commission was acquiring the right-of-way was only evidence, although the best evidence, of the cost of securing adequate access. The owner was not obligated to accept the access strip, but, as in *Brack* second, the jury was properly allowed to consider the availability and the cost of acquisition of a means of access in determining the damages caused by the taking.

If the owner had offered testimony as to the cost of obtaining access to the landlocked 83 acres, that evidence clearly would have been admissible as relevant to the damages caused by the taking. The Commission had a similar right to show that the damage caused by the taking was in large part reparable, and the cost of reparation.

The evidence as to the availability and cost of the access strip was not rendered inadmissible because the Commission secured the option only a few days before the trial. Evidence of the damage caused by a taking in terms of actual cost may not be available until after the date of the taking. Mr. Weber himself testified as to the number of cows by which the herd had been decreased after and by reason of the taking. The cost of alleviating damage caused by a taking, even though it can be ascertained only after the taking, goes to the measure of damages attributable to the condemnation. See *City of Baltimore v. Garrett,* 120 Md. 608, 613-15, 87 Atl. 1057 (1913) ; *City of Baltimore v. Smith & Schwartz Brick Co.,* 80 Md. 458, 470-71, 31 Atl. 423 (1895), and *Webb, supra.*

Courts in other jurisdictions have held admissible testimony by the condemnor as to how the damage to the remaining land of the property owner occasioned by deprivation of access may be lessened, on the principle that the condemning authority has the right, if not the duty, to minimize the damages. *East Side Levee and Sanitary Dist. v. Jerome,* 306 Ill. 577, 138 N. E. 192 (1923) ; *Board of Educ. of Kanawha County v. Shafer,* 124 S. E. 2d 334, 338-39 (W. Va. 1962) ; *Wolfe v. State,* 23 A. D. 2d 136, 259 N .Y. S. 2d 13 (1965). See also *State ex rel. Eastvold v. Superior Court,* 48 Wash. 2d 417, 423, 294 P. 2d 418, 422 (1956). In *Wolfe v. State, supra,* which, on its facts, is close to the second *Brack* case, the court said :

> "It is entirely possible that under the present reservation the claimant could create new access to his property and utilize it to its fullest extent, in which case the present award for full value resulting from a loss of the property would be a windfall to which he is not entitled * * *"
>
> "[I]t is the duty of those exercising the power of condemnation to see to it that no more damage is done to what remains after the appropriation than is necessary * * * The same responsibility should be evident in attempting to minimize the damage which results from the terms and conditions of easements or other forms of limitation or reservation." 259 N. Y. S. 2d at 15-16.

In *Board of Educ. of Kanawha County v. Shafer, supra,* where evidence of an easement reserved to the landowner to restore access was admitted on the question of damages, the court said:

> "If there is a legal way in which the damage to the residue of the defendant's land may be minimized, certainly it will be in the public interest and to the interest of the landowners that such be done. If it should appear that the taking of the parcel of 1.445 acres deprives the landowner of all means of access to the residue of the tract of 56 acres and renders such residue virtually worthless, certainly the infliction of such damages upon the landowners and the consequent public burden of paying therefor should be avoided if there is a way in which such properly may be done." 124 S. E. 2d at 338.

See also 4 Nichols, *Eminent Domain* § 14.22.

As another ground for reversal, the appellant contends that testimony of an expert witness for the Commission, to the effect that the remaining property of the owner would be enhanced in value because of the project for which the condemnation was made, was improperly admitted. Mr. Miley, the Commission's appraiser, was asked several questions as to the enhancement of the remaining property of the owner by reason of the building of the new road and the accessibility to it by the right-of-way to the Big Pool Road. The trial judge excluded most of this opinion testimony as too remote and general, but, over objection, permitted Mr. Miley to testify that when an interchange is put in, all the property around the interchange increases in value. "Of course," he said, "a lot depends on distance. I can't say that a property five miles away will go up the same as the one right next to it, but I know that * * * it takes leaps and bounds."

As the appellant contends, it is the general rule in condemnation proceedings that the jury should not consider either increases or diminution in value because of the public project for which the condemned property is acquired. Code (1957, 1966 Supp.), Art. 33A, § 6; *Brinsfield v. City of Baltimore,* 236

118

Md. 66, 73, 202 A. 2d 335 (1964). The portion of Mr. Miley's testimony not excluded is so general, however, that its admission may not have constituted prejudicial error. The inquisition of the jury was in an amount substantially higher than Mr. Miley's estimate of the damages. In any case, Judge Mc-Laughlin instructed the jury as follows:

> "When you are considering severance damage, you can also take into consideration whether or not, by reason of the road going through, or for any other reason in conjunction with the condemnation, there might be an improvement as to some areas of the land. There is some testimony from the experts that this cloverleaf, he gave the opinion that land close to a cloverleaf causes an acceleration of it in value and you have the right, to use the simplest words that I can, that if you think there is severance value, you consider whether there is severance value or not, and at the same time you have the right to consider whether there is any enhancement and you have the right to offset the one against the other, that is about as simple as I can tell you."

There was no objection to this charge, which directly dealt with the testimony to which reference has been made, and therefore the issue is not before us. Md. Rule 554 e.; *Simco Sales, Inc. v. Schweigman,* 237 Md. 180, 187, 205 A. 2d 245 (1964); *Cropper v. State,* 233 Md. 384, 390-91, 197 A. 2d 112 (1964).

*Judgment affirmed; costs to be paid by appellant.*